

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-17-7

| | |
|---|---|
| CHARLISHA ROBINSON | **Opinion Delivered:** April 26, 2017 |
| APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43JV-15-76] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE BARBARA ELMORE, JUDGE |
| APPELLEES | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Appellant Charlisha Robinson appeals a Lonoke County Circuit Court order terminating her parental rights to her daughter, N.B. Robinson does not contest the sufficiency of the evidence regarding statutory grounds to support terminating her parental rights. She only challenges the circuit court's best-interest determination, arguing that the circuit court clearly erred in concluding that termination of her parental rights was in N.B.'s best interest. For the following reasons, we affirm.

On April 16, 2015, the Arkansas Department of Human Services (DHS) received a call from an investigator from the Crimes Against Children Division (CACD) of the Arkansas State Police. CACD was investigating the death of Robinson's infant daughter, N.R., who died after an overnight stay at Robinson's cousin's house. A month prior to N.R.'s death, DHS had opened a case with Robinson after the child tested positive for

cocaine at birth. As Robinson asserts in her brief, the cause of N.R.'s death was unknown and she was never charged with anything relating to the death.[1]

N.R.'s death, combined with the fact that Robinson tested positive for THC on April 16, 2015, led DHS to exercise a 72-hour hold on N.B. DHS also filed an ex parte petition on April 20, 2015 requesting emergency custody and alleging that N.B. was dependent-neglected. That same day, the circuit court entered an ex parte order granting DHS emergency custody. The circuit court adjudicated N.B. dependent-neglected as a result of parental unfitness related to Robinson's drug use.

At the permanency-planning hearing on April 19, 2016, the court heard testimony from the DHS caseworker assigned to the case. In an order entered on June 30, 2016, the circuit court changed the goal of the case from reunification to adoption.

On May 5, 2016, DHS and the attorney ad litem for the minor child filed a joint petition for termination of parental rights alleging three grounds for termination. The circuit court held a hearing on the petition on September 14, 2016. At the hearing, Sher'Risa Johnson, another cousin of Robinson's, requested placement of N.B. The caseworker testified that Johnson had attempted to gain custody of N.B. when the case first opened, but DHS did not consider her for placement at that time because Johnson was not yet 21 years old. At the time of the termination hearing, Sher'Risa had turned 21 years old, and DHS had approved her home. Both Johnson and Robinson testified that before N.B. entered

---

[1]The investigator interviewed Robinson's cousin, Kiara Robinson, who was caring for the infant at the time of death. She said that she last fed N.R. at 3:00 a.m. and then did not check on her again until 11:00 a.m. The child had suffocated and was dead by the time Kiara checked on her.

foster care, Johnson was N.B.'s primary caregiver.

In an order entered on October 5, 2016, the circuit court found by clear and convincing evidence that it was in the best interest of N.B. to terminate Robinson's parental rights. In making its finding, the circuit court specifically considered the likelihood that the juvenile would be adopted and the potential harm to the health and safety of the juvenile caused by returning the juvenile to the custody of the parent. Robinson's timely appeal is now properly before this court.

Our standard of review in termination-of-parental rights cases is well settled; we review these cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Smithee v. Ark. Dep't of Human Servs.*, 2015 Ark. 506, 471 S.W.3d 227. The termination of parental rights involves a two-step process in which the circuit court must find that the parent is unfit and that termination is in the child's best interest, considering the likelihood of adoption and the potential for harm if the child is returned to the parent's custody. *Murray v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 431,429 S.W.3d 288.

A court must find that at least one statutory ground exists, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633,

839 S.W.2d 196 (1992).

The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Dinkins*, *supra*. The appellate court will not act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court; we only reverse in those cases where a definite mistake has occurred. *See Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 397, 242 S.W.3d 305, 308 (2006).

As noted, Robinson does not challenge the statutory grounds for termination that the circuit court found; on appeal, she solely contests the circuit court's finding that termination would be in N.B.'s best interest. Accordingly, we need not consider whether the circuit court erred in finding that at least one statutory ground for termination existed.

In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Adoptability is not an essential element but is rather a factor that the trial court must consider. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine*, *supra*.

The potential–harm analysis is to be conducted in broad terms and must be viewed

in a forward-looking manner. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. In considering the best interest of the child, there is no requirement that each factor considered be supported by clear and convincing evidence; rather, it is the "best interest" finding that must be established by clear and convincing evidence. *Id.* Finally, the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).

Robinson does not maintain that at the time of the termination hearing she was in a position to obtain custody of her child. Nor does she challenge that DHS presented evidence that N.B. was adoptable. Instead she argues that the circuit court should have allowed her additional time and consideration by placing the child with a relative and that DHS should have evaluated relatives for an outcome of placement instead of terminating her parental rights. However, we will not reverse a decision of termination based on the mere existence of a potential relative placement. *See Dubois v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 401; *Bryant v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 390, 383 S.W.3d 901.

Here, the circuit court properly terminated Robinson's parental rights because the statutory provision for relative placement includes adoption, thus contemplating that parental rights may be terminated even when a relative is available for placement. *See* Ark. Code Ann. § 9-28-105. Furthermore, under the Arkansas permanency-planning statute, Arkansas Code Annotated section 9-27-338(c), if a juvenile cannot be returned home or a plan for reunification cannot be implemented, the next most permanent goal for a child is

SLIP OPINION

adoption, with DHS filing a petition for termination of parental rights. Exceptions to this mandate include when the child is being cared for by a relative and it is determined that termination of parental rights is not in the child's best interest. Ark. Code. Ann. § 9-27-338(c)(3)(A). Because N.B. was not in the custody of a relative at the time of termination, and the circuit court found termination was in the juvenile's best interest, the exceptions do not apply.

Robinson also argues that there was no evidence of potential harm in this case. Under Arkansas law, the circuit court is required to consider only the potential future harm to the juvenile's safety that might result if she were returned to appellant's custody. The circuit court was not required to find that the juvenile's return to Robinson would result in actual harm, nor was the court required to identify a specific potential harm.

There is sufficient evidence in the record to show that the court considered the effect on the health and safety of the child which would be caused by a return to the custody of Robinson. The evidence presented, including Robinson's own admission, showed that she continued to use drugs at the time of the permanency-planning hearing and did not have stable employment. At the termination hearing, Robinson testified that she still did not have stable employment and was dependent on her family. Specifically, when asked if it would be fair to say that she used [drugs] on and off throughout the case and continued to do so, she answered in the affirmative. Robinson's continued use of drugs is sufficient to show potential harm to the child. *See Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119; *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7.

The circuit court considered the evidence and found that, looking at the totality of

the circumstances, there would be potential harm in returning N.B. to Robinson. The court also found that adoption by means of termination of parental rights was the appropriate permanency plan and in the juvenile's best interest. Because there was sufficient evidence of both adoptability and potential harm, we hold that the circuit court's best-interest finding is not clearly erroneous. We are not left with a definite and firm conviction that a mistake was made. As such, we affirm.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.