

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV–17–322

TRACI PARRISH

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILD

APPELLEE

**OPINION DELIVERED:** OCTOBER 25, 2017

APPEAL FROM THE SCOTT
COUNTY CIRCUIT COURT
[NO. 64JV-15-27]

HONORABLE TERRY SULLIVAN,
JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Judge

Appellant Traci Parrish appeals the January 23, 2017 order of the Scott County Circuit Court terminating her parental rights (TPR) to her minor child, V.R. On appeal, appellant challenges both the trial court's best-interest and statutory-ground findings. We affirm.

### I. *Facts*

On August 13, 2015, appellee, the Arkansas Department of Human Services (ADHS) filed a petition alleging that V.R. was dependent-neglected on the basis that the child was at a substantial risk of harm as the result of serious abuse. The basis for ADHS's claim was detailed in an affidavit attached to the petition that was completed by one of ADHS's family service workers, Sherry Benjamin. Ms. Benjamin stated that a report had been made to the child-abuse hotline on February 11, 2015, alleging that appellant had spanked V.R. to such an extent that it resulted in bright red marks to the child's legs, buttocks, and vaginal area. Appellant was arrested and charged with first-degree domestic battering, and V.R. remained

with Donald and Teresa Niblett, appellant's mother and stepfather, while appellant was incarcerated. Appellant pleaded guilty to a reduced charge and, upon her release, she moved in with her parents and V.R. Ms. Benjamin explained that on July 15, 2015, appellant notified ADHS that she and V.R. wanted to move into their own apartment. ADHS explained that if she moved out on her own, a safety plan would be submitted to the trial court for approval based on the history of abuse. Appellant agreed, and she and V.R. moved shortly thereafter. The affidavit also set forth the history between appellant and V.R., which included a prior foster-care case that resulted in appellant losing custody of V.R. from August 2013 through April 2014.

On September 22, 2015, the trial court held a hearing on the thirty-day petition.[1] Ms. Benjamin's testimony reiterated what she had sworn in her affidavit. She also testified about the details of the safety plan that was implemented in July and noted that appellant had been complying with that plan. After initially agreeing to the safety plan, the trial court announced that it would not approve the thirty-day petition and ordered ADHS to immediately take V.R. into custody.

An adjudication and disposition order was entered on October 1, 2015, in which the trial court found V.R. dependent-neglected, found that leaving custody with appellant was

---

[1]This court granted appellant's motion to supplement the record with this hearing in an order entered on May 31, 2017.

contrary to the health and safety of V.R., and placed custody of her with ADHS.[2] The trial

court specifically found that

> [appellant] was found guilty in December 4, 2012, of committing assault in the first
> degree, a Class A misdemeanor, against her daughter, [V.R.], and this caused her
> child to be placed in foster care for eight months before she was reunified with
> [appellant]. [Appellant] was found guilty on May 5, 2015, for domestic battering in
> the third degree, a Class A misdemeanor, on [V.R.], and was ordered to pay fines,
> one year of unsupervised probation, successfully complete batterer's treatment or
> anger management within six months, and a no offensive contact order was put in
> place. The original charge was domestic battering in the second degree, a Class C
> felony.

The trial court set a goal of reunification and ordered appellant to do certain things to

achieve that goal:  (1) watch "The Clock is Ticking" video; (2) attend and complete

parenting classes; (3) obtain and maintain stable and appropriate housing; (4) obtain and

maintain stable and gainful employment; (5) attend counseling as recommend by counselor

or therapist; (6) submit to a psychological evaluation and follow all recommendations; (7)

submit to homemaker service; (8) cooperate with ADHS; and (9) comply with the case

plan.

A review hearing was held on November 24, 2015, and in an order entered that

same day, the trial court found that appellant was complying with the case plan, working

full time, and attending visitation with V.R. The trial court continued the goal of

reunification. Following a second review hearing on March 8, 2016, the trial court found

---

[2]At the beginning of the dependency-neglect hearing, the parties announced that
they would stipulate to a dependency-neglect finding based on parental unfitness, but our
review indicates that no such stipulation was included in the written order.

that, given the results of appellant's psychological evaluation, the goal of reunification was "problematic":

> [Appellant] has partially complied with the case plan in that she has completed her psychological evaluation, which diagnosed her with Personality Disorder and Opioid Disorder (in remission). The evaluation further reported [appellant] does not understand the severity of her situation, minimizes the events related to her two (2) convictions for physical abuse, and multiple abuse related police calls to her home. [Appellant] blames others for her situation. She continues to work full-time at Tyson and has an apartment. She regularly visits [V.R.], but has made inappropriate remarks to her, such as predicting when she will be coming home. [Appellant] was attending Counseling, but "no-showed" for her February session.

Despite these concerns, the trial court continued the goal of reunification. But following a permanency-planning hearing on August 9, 2016, the trial court ordered that the goal of the case be changed to adoption.

On October 6, 2016, ADHS filed a TPR petition, alleging multiple grounds in support of its request for TPR, and further alleging that TPR was in the best interest of V.R. The trial court held a hearing on the TPR petition on November 8 and 22, 2016.

Dr. Robert Spray, a clinical psychologist, testified that he conducted a psychological evaluation on appellant in December 2015 following a referral from ADHS. According to Dr. Spray, the findings of that exam indicated that (1) there is a tendency for appellant to project blame; (2) appellant is sometimes guilt ridden; and (3) appellant has a tendency to deny the severity of her problems and the impact that the chronic interpersonal and family conflicts have on her life and the children.

Rhonda Peppers, a counselor at Western Arkansas Counseling and Guidance Center (WACGC), testified that she had worked with appellant from December 2015 through June 2016. Ms. Peppers stated that appellant made progress during her sessions, demonstrated

fewer symptoms of anxiety and depression, and began to "open up" more and discuss her emotional issues, which had been difficult for her in the beginning. Ms. Peppers explained that, initially, appellant minimized the situation that resulted in V.R.'s being in foster care, but that in subsequent sessions appellant exhibited a better understanding of the situation.

Melissa Jorsch, a drug-and-alcohol counselor with Ozark Mountain Alcohol Residential Treatment (OMART), testified that appellant was referred to OMART but was discharged before completion after appellant was discovered in her room smoking cigarettes. On cross-examination, Ms. Jorsch admitted that appellant's ninety-day completion of the program at Gateway would be comparable to her completing the program at OMART, which was for thirty days.

Allison Carson, who served as V.R.'s counselor at WACGC beginning in April 2016, testified that V.R. had been diagnosed with adjustment disorder. Ms. Carson confirmed that she had been asked about providing family counseling for V.R. and appellant and that considering V.R.'s progress, she thought it was a good idea. Ms. Carson stated that after family counseling, V.R. began to act defiantly, clingy, and whiny. Ms. Carson also explained that she noticed a lack of empathy on appellant's part during a session when V.R. was sad; however, she also acknowledged that at other times when the two played together, V.R. and appellant did well together. She denied that V.R. had any special needs that would present a challenge to appellant in parenting the child.

Ms. Carson expressed concern about information she had received regarding V.R.'s declining behavior, including reports from V.R. that she had been getting into trouble in her foster home. But on cross-examination, when it was explained that V.R. had been

having weekly visits with her mother for the last year, Ms. Carson admitted that she could not be sure whether V.R.'s declining behavior was related to something other than the visits with her mom. She also stated that she believed V.R. wanted to be reunited with her mom. Ms. Carson acknowledged that V.R. and appellant needed intensive family therapy, but she explained that none had been offered since August, primarily because she did not see the point because ADHS was moving forward with its TPR petition. Finally, Ms. Carson acknowledged that there are further services available to help reunify appellant and V.R. that had not yet been offered to them.

Ms. Benjamin testified and stated that the barriers to reunification of V.R. with appellant included that appellant had a difficult time understanding her issues with discipline, as well as in her interactions with V.R., and that appellant seemed to act as more of a friend to V.R. than a parent. Ms. Benjamin acknowledged that appellant had made progress in her case plan and was doing everything that was asked of her at the time the case was transferred in February to another caseworker. She explained that she never requested a trial-home placement because of concerns with appellant not understanding the discipline issue and the history of abuse. She acknowledged that most of her knowledge was from the early part of the case prior to the transfer.

Bridget Warren, a program assistant for ADHS, testified that she had supervised visits between appellant and V.R. According to Ms. Warren, the biggest concern during those visits was a lack of structure and appellant's wanting to please V.R. But Ms. Warren noted that in more recent visits, appellant had attempted to provide more structure for V.R. She

also stated that she believed appellant wanted to do the right thing and loves V.R. Ms. Warren acknowledged that when given advice, appellant listened and heeded that advice.

Appellant acknowledged in her testimony at the hearing that she was in court because she had a previous case resulting from her pulling V.R.'s hair and a second case that was the result of her spanking V.R. Appellant admitted that her drug use had probably prolonged the process of the case, but she stated that she had found and completed a rehabilitation program that worked for her. Appellant testified that the last time she used methamphetamine was in June, admitted that she is an addict, and explained that she used drugs that last time because she was lonely with V.R. in foster care. Appellant acknowledged that she was hospitalized with suicidal ideation, which she claimed was because of losing custody of V.R. and battling depression. She denied ever losing her job or that a loss of employment prompted her suicidal thoughts. Appellant stated that she had been out of her rehabilitation program for a week and was living with her mother. When asked about the abuse that led to the two cases being opened with ADHS, appellant stated that she pulled V.R.'s hair out of frustration following an incident when her mother locked her out of the house in extreme heat and that the spanking likely also was the result of frustration.

Appellant testified that following her release from Gateway, where she completed a ninety-day rehabilitation program, she began outpatient treatment at Harbor House as part of a three-month program. According to appellant, ADHS never offered one-on-one parenting classes for V.R. and her, nor had ADHS offered intensive family services in either of her two cases. Appellant acknowledged that she was told that she needed to structure her visitation with V.R. and indicated that they do arts and crafts, play on the playground, eat,

and talk during weekly visitation. She expressed that V.R. was glad to see her at the start of their visits and disappointed at the completion of the visits. Appellant also expressed concern that since V.R. had been in her foster placement, she has had head lice for almost three months and has had multiple cases of ringworm.

Ms. Niblett, appellant's mother, testified that appellant had shown progress since she started counseling. Ms. Niblett explained that she had contacted police about the incidents involving V.R. that resulted in appellant being charged with abuse. On cross-examination, Ms. Niblett acknowledged that appellant was doing better and that her personality had changed because of the counseling and drug rehabilitation. Ms. Niblett admitted that there had been a time in V.R.'s life when she was concerned for V.R. to be with appellant, but she stated that that she no longer had those concerns.

Carol Harp testified as the current case manager assigned to the case, and she recommended that the trial court terminate appellant's parental rights. Ms. Harp testified that, in her opinion, despite the services offered to her, appellant still did not understand her role as V.R.'s mother. Ms. Harp did acknowledge that she had noticed improvement with appellant since she completed inpatient treatment, yet she still opined that those changes were not "significant enough."

Appellant was recalled to the witness stand, and she explained that in the two weeks since the first day of the TPR hearing, she had tested negative on a drug screen, attended two individual and two group-therapy sessions, and attended individual counseling with Ms. Peppers. When asked about allegations of role reversal between V.R. and her, appellant indicated that her behavior in correcting V.R. was somewhat different because she knew

that ADHS was watching her. Appellant also testified that she was working forty hours a week.

After the hearing, the trial court announced that it was granting ADHS's TPR petition, finding that ADHS proved the grounds of failure-to-remedy, subsequent-factors, and aggravated circumstances, and finding that TPR was in V.R.'s best interest. The trial court specifically considered the required best-interest factors:

> The Court finds by clear and convincing evidence that it is in the best interest of [V.R.] to terminate parental rights. In making this finding, the court specifically considered: (A) the likelihood that [V.R.] will be adopted if the termination petition is granted, specifically the testimony of FSW Carol Harp who indicated that she does not foresee any problems with finding a forever family for [V.R.]; and, (B) the potential harm to the health and safety of [V.R.] caused by returning [V.R.] to the custody of [appellant]. The Court finds the testimony of FSW Carol Harp to be credible and [appellant's] continued refusal to accept responsibility for her actions, her failure to understand the severity of the abuse, her mental instability, and her inability to maintain sobriety demonstrate how [V.R.] would be at risk of potential harm if returned to [appellant].

The trial court's TPR order was filed on January 23, 2017.[3] Appellant filed a timely notice of appeal on February 9, 2017.

## II. *Standard of Review*

Our court recently reiterated our well-settled standard of review in termination-of-parental-rights cases in *Robinson v. Arkansas Department of Human Services*, 2017 Ark. App. 251, at 3–4, 520 S.W.3d 702, 704–05:

> [We] review these cases de novo. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. The termination of parental rights involves a two-step process in which the circuit court must find that the parent is unfit and that termination is in the child's

---

[3]The trial court also terminated the rights of Richard Rodriguez, but he is not a party to this appeal.

 

best interest, considering the likelihood of adoption and the potential for harm if the child is returned to the parent's custody.

> A court must find that at least one statutory ground exists, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.

> The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the circuit court to judge the credibility of witnesses. The appellate court will not act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court; we only reverse in those cases where a definite mistake has occurred.

*Id.* (internal citations omitted).

### III. *Grounds Supporting TPR*

ADHS alleged three statutory grounds in support of its TPR petition, and the trial court found that each ground was proved clearly and convincingly. Although appellant asserts that a de novo review of the record will reveal that there was insufficient evidence offered regarding each of the three grounds, we disagree and hold that the trial court found by clear and convincing evidence that ADHS proved that appellant had subjected V.R. to aggravated circumstances. Because proof of only ground is necessary, *see Allison v. Arkansas Department of Human Services*, 2017 Ark. App. 424, we need not address the other two asserted grounds and hold that the trial court's decision to terminate appellant's parental rights was not clearly erroneous.

The aggravated-circumstances ground pled and found to be proven by the trial court is codified at Arkansas Code Annotated section 9–27–341(b)(3)(B)(ix)*(a)* (Repl. 2015) and allows for the termination of parental rights when a parent is found by the trial court to have

subjected any juvenile to aggravated circumstances. "Aggravated circumstances" includes a determination that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*).

> In terminating appellant's parental rights under this ground, the trial court found that
>
> it would be useless and repetitious to provide more services to the family at this point. Considering [appellant]'s continued refusal to accept responsibility for her actions, her failure to understand the severity of the abuse, her mental instability, and her inability to maintain sobriety, the Court cannot foresee a time in the near future when the child could be safely returned to her mother.

Appellant maintains that the trial court's conclusion that forms the basis for its finding that ADHS proved aggravated circumstances is contrary to the evidence introduced at the TPR hearing.

Appellant maintains that the trial court ignored evidence that proved ADHS failed to offer services to V.R. and her that would help them reunify, as set forth in Ms. Carson's testimony. Further, Ms. Harp admitted that she had never provided one-on-one parental counseling to appellant and V.R. and was unaware if it had ever been offered by a previous caseworker. Despite the historically tumultuous relationship between appellant and Ms. Niblett, appellant likewise urges that there is no evidence that ADHS offered any type of family counseling for appellant and her mother. Appellant challenges how the trial court can conclude that further services would be useless or repetitious when ADHS workers claim that a "myriad of services" had been offered, but the evidence indicates that ADHS failed to offer what appellant deems the most critical type of counseling services her family needed.

Appellant claims that despite ADHS's failure to offer such services, she demonstrated growth and improvement during this case that was acknowledged by Ms. Carson and Ms.

Harp, as well as by Stephanie Holland, an ADHS employee who had worked with appellant and V.R., who testified about a visit during which appellant worked with V.R., who was being aggressive toward appellant, and acknowledged that appellant had been to get the situation under control.

Appellant argues that the trial court appeared to weigh only the evidence as it existed when this case was opened and discounted later evidence, particularly as to appellant's efforts and improvements, that was introduced at the TPR hearing. She claims that the trial court's finding that this ground was proved was improperly based on speculation rather than evidence. *See Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 254, 240 S.W.3d 626, 631 (2006) (acknowledging that the law requires more than a mere prediction or expectation on the part of the trial court that reunification services will not result in successful reunification).

We disagree. While the trial court found that three of the nine statutory grounds listed in section 9-27-341(b)(3)(B) existed and warranted TPR, without conceding the proof of the remaining statutory grounds, ADHS's response focuses on the aggravated-circumstances ground, and we agree that the evidence is clear and convincing.

Because appellant's only argument is that the trial court's little-likelihood finding—and the resulting aggravated-circumstances finding—was clearly erroneous, the trial court's aggravated-circumstances finding cannot, for any other reason, be considered erroneous. *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, at 5, 385 S.W.3d, 367, 370. Under the Juvenile Code, aggravated circumstances exist when the trial court finds that there is little likelihood that services would result in successful reunification. *See* Ark. Code

SLIP OPINION

Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*); *see also* Ark. Code Ann. § 9-27-303(6) (defining aggravated circumstances).

The evidence before us supports that appellant's neglect and abuse of V.R. led to ADHS's long-term involvement with the family. When V.R. was eighteen months old, allegations that appellant had dragged V.R. by the hair were found to be true. Appellant pleaded guilty to first-degree assault with respect to that incident. Approximately one year later, V.R. was placed in foster care, but eight months later, appellant regained custody:

> [Appellant] also has two true findings from May 7, 2012, for Abuse—extreme or repeated cruelty for lifting [V.R.] up by her hair and dragging her several feet and for Neglect—inadequate supervision due to being emotionally unstable and unable to appropriately care for her child. This ultimately resulted in ADHS taking [V.R.] into foster care a year later, on August 28, 2013, and she regained custody on April 22, 2014.

Evidence indicates that during the first dependency-neglect case, ADHS provided many services:

> Referrals and services provided by ADHS on this previous case included: psychological assessment (03-08-2013), [ADHS] parenting classes (records indicate she completed a program but no date—she is currently involved in [DHS] associated parenting program), parenting without violence classes (completed 12-10-20l3), individual counseling (August 2013 to April 2014), case management (beginning 10-08-2012), foster care services (August 28, 2013 to April 22, 2014) reunification (April 22, 2014), and drug testing (randomly, 1-2013 to 11-2014, all negative, and on 06-10-2015, also negative).

Ten months after appellant had regained custody of V.R., she was arrested and charged with first-degree domestic battery, with V.R. the victim yet again. V.R. was placed in foster care, and ADHS provided a number of services including transportation, home visits, foster care, parenting classes, visitation, and counseling. During V.R.'s second foster-care placement and ADHS's second round of services, appellant still failed to achieve

reunification. Instead, she used methamphetamine and violated the trial court's orders, including the requirement to obtain and maintain a stable home.

ADHS's initial involvement with the family until the TPR hearing has encompassed a span of approximately fifty-four months. This involvement included V.R.'s out-of-home placements, which totaled twenty-four months. After V.R. was initially removed for neglect and abuse, appellant succeeded in regaining custody with the assistance of ADHS-provided services, yet she was unable to sustain it because of continued neglect and abuse. Accordingly, we hold that the trial court's little-likelihood finding was not clearly erroneous. *See Yarborough, supra* (affirming little-likelihood finding when parent was given multiple opportunities over a long period to properly care for child yet failed to).

Appellant's remaining arguments are nothing more than requests that the evidence before us be reweighed. We decline to do so because the trial court weighing the evidence differently than appellant wanted it to be weighed is not reversible error. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 509, 262 S.W.3d 159, 166–67 (2007). To find merit to her argument would require this court to act as a super fact-finder or to second-guess the trial court's credibility determination, which is not our function. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149.

## IV.  *Best-Interest Analysis*

In making a best-interest determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)–(ii). Appellant

does not challenge the adoptability prong of the best-interest analysis. She does challenge the trial court's potential-harm finding.

Here, the trial court relied on the testimony of Ms. Harp who indicated that appellant had refused to accept responsibility for her actions, had refused to understand the severity of the abuse, had suffered from mental instability, and had failed to maintain her sobriety. Appellant claims that to the extent that the trial court's conclusion hinges on its credibility finding of Ms. Harp, it is not sufficient for a witness who offers an opinion to merely be credible—that opinion must be based on evidence rather than speculation. Appellant notes that Ms. Harp testified regarding the risk of harm to V.R. if she were returned to appellant, stating that appellant had received multiple services but "still expresses no understanding of why whipping V.R. was wrong and she still has no understanding, you know, of the role as far as the mother, the nutrition, the discipline, things like that." Appellant claims that the evidence actually indicated appellant had been able to understand the problems with her physical discipline of V.R. As to the issue raised by ADHS about appellant wanting to please V.R. and not being strict enough with V.R., appellant admitted that her behavior with correcting V.R. was somewhat different when she knew that ADHS was watching her. She contends that it is not wholly unreasonable for her to be fearful of being too strict with V.R. considering that V.R. was removed from her custody because appellant was found to have been too harsh when physically disciplining V.R.

Appellant acknowledges that the trial court is neither required to find that actual harm would result nor to affirmatively identify a potential harm. *See, e.g.*, *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. That said, she urges that the

trial court should be required to do more than simply rely on the opinion testimony of a caseworker when that opinion runs counter to the evidence and was speculative at best. Basically, appellant argues that Ms. Harp's opinion testimony lacked a proper foundation. As this is her only challenge to the best-interest finding, the trial court's best-interest finding cannot, for any other reason, be considered erroneous. *Anderson*, *supra*.

We hold that the time to challenge Ms. Harp's opinion testimony has passed. An objection to the foundation for, and accordingly the admission of, Ms. Harp's opinion testimony should have been made when the testimony was offered. Ark. R. Evid. 103(a)(1) (2016). No such objection was made. Accordingly, this opinion testimony—rather than supporting reversal—can be used to affirm the trial court's decision. *See New Empire Ins. Co. v. Taylor*, 235 Ark. 758, 362 S.W.2d 4 (1962) (concluding that if a party fails to object to incompetent evidence, it becomes a part of the evidence that can support a finding).

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.