Cite as 2020 Ark. App. 10

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-19-679

| | | |
|---|---|---|
| | | **OPINION DELIVERED:** JANUARY 15, 2020 |
| MIRANDA DYE | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-18-224] |
| V. | | |
| | | HONORABLE STACEY ZIMMERMAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | AFFIRMED |
| | APPELLEES | |

**ROBERT J. GLADWIN, Judge**

Miranda Dye appeals the order terminating her parental rights to her daughter, MC. On appeal, she argues that the circuit court's best-interest finding was not supported by sufficient evidence. We affirm.

I. *Facts and Procedural History*

This case began on March 2, 2018, with the Arkansas Department of Human Services (DHS) petitioning for emergency custody and dependency-neglect of MC, born September 26, 2017. An affidavit attached to the petition alleges that police had been called to the home of Miranda Dye and Lance Cooksey, MC's father, due to a domestic

altercation.[1]  Lance was arrested as a result of the dispute, and Miranda was cited for endangering the welfare of a minor.  M.C. was placed in DHS custody on a seventy-two-hour hold because the residence, a fifth-wheel-type RV trailer, was filthy: dirty dishes were on the counters, floors, and stacked alongside the bed; and the bathroom toilet was filled with urine, and there was a bucket of urine sitting alongside the toilet.  Also, Miranda submitted to a drug screen, which was positive for amphetamines, methamphetamine, and THC.

The circuit court signed an ex parte order granting custody to DHS, and on March 9, the court found probable cause existed that it was contrary to MC's welfare to return custody to Miranda.  The court found that the parents had neglected M.C.'s home environment and that they had inadequately supervised M.C. due to substance abuse.  MC was placed with Teresa Genz, a paternal aunt.   Both parents were ordered, among other things, to cooperate with DHS and submit to weekly random drug screens.

An adjudication order was filed April 19, 2018, finding that MC was dependent-neglected as a result of parental unfitness.  The court ordered that MC remain in DHS custody and that the goal of the case was reunification with her parents.  Lance was ordered to pay $50 a week child support to Teresa Genz, and Miranda was ordered to contribute "once she gets a job."  The court also noted that the caseworker testified that the parents' home had been cleaned and was safe and appropriate.

---

[1]Lance's parental rights were terminated by the same order at issue; however, he does not join in this appeal.  Accordingly, this opinion mentions Lance only when necessary.

2

A review hearing was held on September 12, and custody remained with DHS. MC had been placed in foster care with Cassie and Cody Julich, Lance's niece and her husband, and the court found that this placement was in MC's best interest.[2] The goal remained reunification with the parents. Miranda was found to have complied with all of the court orders and the case plan, and the court found that she had made much progress toward alleviating the causes of removal.

However, after a permanency-planning hearing on February 6, 2019, the court authorized a plan for adoption with DHS to file a petition for termination of parental rights (TPR). The court found that Miranda had not demonstrated stability or sobriety nor had she demonstrated the ability to protect MC. She missed several drug screens after being called in for her weekly tests, and she tested positive for methamphetamine on January 22, 2019. Miranda had not paid child support as ordered, and she and Lance had been arrested on December 19, 2018, for possession of drug paraphernalia and tampering with physical evidence. Miranda was ordered to enter a residential-treatment facility and complete a program for substance abuse.

DHS filed a petition for TPR on April 4 alleging that both parents' rights should be terminated and seeking the authority to consent to adoption. The statutory ground alleged against Miranda was that as the custodial parent, she had failed to remedy the conditions

_____

[2]DHS filed a motion for emergency hearing on July 26, 2018, alleging that it had received a referral for inadequate supervision of MC on May 4. DHS claimed that MC had nearly drowned in the bathtub while under Teresa's supervision and that the allegation had been investigated and found to be true. An order was filed on August 2 that authorized DHS to remove MC from Teresa's home, and an August 7 visitation order provided that DHS would supervise visitation between MC and her parents.

3

that caused MC's removal and that MC had remained out of her custody for twelve months. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2017). The petition alleged that even though Miranda had participated in some services, her recent arrest demonstrated that her illegal drug use would continue to seriously affect her ability to care for MC. DHS also alleged the "other factors" ground against both parents and claimed that the parents' noncompliance demonstrated an indifference to the prospect of reunifying with MC. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. DHS pointed to the parents' December arrests and their missed drug screens. DHS alleged that MC is adoptable and would be subject to potential harm if returned to her parents.

At the May 10 TPR hearing, K.C. Oliver, the family service worker assigned to the case, testified that Miranda had participated in individual counseling and visitation with MC but had not submitted to random drug screens or obtained stable housing or employment. She said that MC is adoptable and very bonded to her family. She also said that further contact with MC's parents would be "up to the family." She said that Miranda had left residential treatment after five days, and Miranda had told her it was because of a high-risk pregnancy. She said that Miranda had been arrested on May 3, 2019, for failure to appear, which stemmed from her December 2018 arrest for possession of drug paraphernalia and tampering with evidence. Oliver was told that Miranda had not followed the program rules at Gateway and that she "had to be" discharged from the residential-treatment facility.

4

Miranda testified that she is living with Lance's mother and that there is hot water in the camper where she lives. She said that she had been arrested with Lance on December 19, 2018, for possession of drug paraphernalia and that she did not anticipate any jail time for her failure to appear. Miranda was twenty-seven weeks pregnant at the time of the hearing and said she had not known she was pregnant when she used methamphetamine in January 2019. She claimed that she would drug test "clean" on the day of the hearing. She testified that she did not want her parental rights terminated, but she thought "the permanency to Cassie and Cody would be the best at this point." She said Lance is the father of the baby she was carrying, but she did not plan to continue her relationship with him. She said that she would rather MC be placed in permanent custody rather than adopted "as it's one less process." She said that she could not take care of MC "right now" and that she wanted MC and the child she is carrying to have a relationship. She said that she had not worked since she went to rehab the first time, and she had not paid any support.

Cassie Julich testified that MC had been placed with her family for the last nine months and that MC was "doing great." She said that MC is bonded with her and her family and that they want to give MC a permanent home. She said that MC needs stability and a place to belong and that if parental rights were terminated, they want to adopt MC. She also said that Miranda had paid less than one hundred dollars for MC's support.

The TPR order was filed June 10, 2019. The circuit court found that the conditions that caused removal had not been remedied, citing Miranda's drug use and her

5

December 2018 arrest.  Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*.  The circuit court also relied on the "other factors" ground, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*, finding as follows:

> [T]he parents, through their actions, have demonstrated an indifference and unwillingness to reunify with [MC].
>
> For instance, both parents were arrested for Possession of Drug Paraphernalia (methamphetamine syringe) on December 19, 2018, which indicates that the parents plan to continue to abuse illegal drugs, even after receiving, and participating in, family services. Both the mother and the father have missed several drug screens and also sporadically tested positive for methamphetamine and amphetamines.
>
> Both parents tested positive for methamphetamine on January 22, 2019, approximately 11 months after [MC] came into foster care. . . . The mother has not been consistent in participating in services. . . . The mother's testimony today is that, "I want to be [MC's] mom, but I don't know if I can care for her."
>
> In April of 2018, this Court ordered both parents to pay child support for [MC]. Specifically, the father was ordered to pay $50 per week and the mother was ordered to contribute once she obtained a job. [MC] has been in foster care for 17 months, and the parents have only paid a whopping $250 in child support.
>
> The evidence presented today clearly demonstrates that neither parent is capable of providing for [MC] and keeping her safe from harm, particularly the type of harm that caused her to come into foster care. The only consistency throughout this case has been the parents' inconsistency. The Court finds that both parents are totally unfit.

The court found by clear and convincing evidence that it is in MC's best interest to terminate parental rights.  The court considered that MC is likely to be adopted and that MC would be subjected to potential harm if returned to her parents.  The court found,

> The parents' arrest for illegal drugs and their repeated failed drug screens clearly demonstrate that the mother cannot safely parent [MC]. The parents are clearly not in a position to take [MC] home today. The Court finds that continued

contact with the parents would be emotionally damaging and detrimental to [MC's] well-being as she does not even know who her mother is.

Miranda filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

In *Bunch v. Arkansas Department of Human Services*, 2017 Ark. App. 374, at 1–2, 523 S.W.3d 913, 914–15, this court stated,

> We review termination-of-parental-rights cases de novo. *Dunn v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 34, 480 S.W.3d 186. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Dunn, supra.* The purpose of terminating a parent's rights to his or her children is to provide permanency in the child's life when returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227. We will not reverse a termination order unless the trial court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Health and Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

## III. *Best-Interest Analysis*

Miranda argues that there were no compelling reasons to terminate her parental rights; indeed, she claims that it was not in MC's best interest to do so. She contends that the court is not limited to the two factors—likelihood of adoption and potential harm—in

determining the child's best interest. She claims that other factors include the preservation of the child's relationship with a grandparent; the severance of child support from a parent; whether a less drastic measure could be employed; whether continued contact with the parent would be beneficial; and whether the child is living in continued uncertainty.

Miranda relies on *Bunch, supra* (reversed TPR because children were in custody of their grandmother at time of termination, and there was ample evidence that continued contact with their mother was in their best interest); *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102 (reversed termination of father's parental rights because the child was not being placed for adoption, she was in the custody of her mother; thus, termination of father's parental rights would not serve to achieve permanency; there was no evidence that the father physically abused or harmed the child; and the termination of father's rights endangered the child's relationship with her grandmother, the most stable influence on the child); and *Conn v. Arkansas Department of Human Services*, 79 Ark. App. 195, 85 S.W.3d 558 (2002) (reversed TPR because it was solely based on prior involuntary termination of parents' right to other child).

Miranda also relies on *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, in which this court reversed TPR. We reasoned,

> [W]e are unable to subscribe to the idea that termination in this case will necessarily provide greater stability in S.C.'s life because he is in the custody of his grandparents, who will continue to care for S.C. and presumably be just as willing to adopt him at some future time should reunification efforts ultimately fail. *See Ivers v. Ark. Dep't of Human Servs.*, 98 Ark. App. 57, 250 S.W.3d 279 (2007). We do not share DHS's concern that termination is necessary to ensure that S.C. does not "languish in foster care indefinitely," because he is not in foster care with strangers.

8

He has continued in the custody of grandparents in the same place that he lived before this case began, and that is where he will remain whether or not his parents' rights are terminated in these proceedings.

*Cranford*, 2011 Ark. App. 211, at 11, 378 S.W.3d at 857.

Miranda argues that the evidence demonstrates that MC has been placed with her first cousin—her father's niece—and that she is developing relationships with many of her father's extended relatives. Miranda argues that she engaged in the case and had made progress despite some setbacks. Finally, Miranda contends that the termination order punishes her, even though MC has already obtained permanency. *See* Ark. Code Ann. § 9-27-341(a)(2). She asserts that MC's needs are met by her placement with the Julichs, and there was no further need to strip Miranda of her parental rights. She claims that termination did not benefit MC but deprived her from having her mother in her life.

DHS contends that the TPR order should be affirmed because sufficient evidence supports the circuit court's best-interest finding. Miranda does not challenge the circuit court's termination grounds or the specific statutory best-interest factors—adoptability and potential harm; thus, this court must affirm these findings. *E.g.*, *Phillips v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 383, at 11–12, 585 S.W.3d 703, 709.

Rather, Miranda relies on cases such as *Cranford* and *Bunch*, arguing that termination was not in MC's best interest because she was placed with relatives. In the cases on which Miranda relies, the children were in the "custody" of relatives, not merely placed with them. *See Phillips*, 2019 Ark. App. 383, at 14–15, 585 S.W.3d at 710–711 (distinguishing *Cranford* and *Bunch* on the basis of permanent custody of a relative, not

9

temporary foster-care placement with a relative). A *Cranford-Bunch* challenge applies only to cases the child is not in DHS's custody at the time of termination. *Heath v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 255, at 6–7, 576 S.W.3d 86, 89; *Bolden v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 218, at 13–14, 547 S.W.3d 129, 136–37. Because MC was in DHS custody when Miranda's parental rights were terminated, her *Cranford-Bunch* challenge is without merit.

Further, Miranda missed some drug screens and failed others for illegal substances, such as methamphetamine; she failed to pay court-ordered child support; she was arrested for possession of drug paraphernalia and tampering with physical evidence; she failed to maintain stable housing and employment; she failed to complete inpatient drug treatment; and she failed to complete individual counseling. Accordingly, the circuit court's finding that termination was in M.C.'s best interest is not clearly erroneous. *See Phillips*, *supra* (affirming the best-interest finding due, in part, to appellant's failure to comply with the case plan).

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.