Cite as 2021 Ark. App. 457

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-21-267

| | |
|---|---|
| LARISSA HICKMAN<br><br>APPELLANT<br><br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** November 17, 2021<br><br>APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44JV-19-120]<br><br><br>HONORABLE DIANE WARREN, JUDGE<br><br>AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Larissa Hickman appeals the Madison County Circuit Court's termination of her parental rights to her daughters, PH, born November 6, 2014; and LH, born April 25, 2016.[1] On appeal, Hickman argues that it was not in her daughters' best interest for her parental rights to be terminated. We affirm the termination of Hickman's parental rights.

The Arkansas Department of Human Services (DHS) exercised a seventy-two-hour hold on the children on November 21, 2019, after a family service worker, who was attempting to contact the family regarding an open investigation about Hickman's arrest for possession of methamphetamine paraphernalia while her children were with her, arrived at the Hickman home around 6:00 p.m., and three-year-old LH answered the door. LH and

---

[1]The parental rights of the children's father, William Hickman, were also terminated in this order, but he is not a party to this appeal.

five-year-old PH were unsupervised in the living room while their parents were sleeping in a bedroom. While PH went to wake her parents, the family service worker noticed food on the floor of the living room, as well as numerous tools, sharp objects, and cans of spray paint, all of which were within the children's reach. Methamphetamine drug paraphernalia was found in the Hickmans' bedroom, and numerous prescription medications not prescribed to either parent were on the bathroom floor. Although the Hickmans claimed they had almost stopped using drugs, both tested positive for methamphetamine and amphetamines that night; Hickman stated they never used methamphetamine in the children's presence, only while they were napping. William was arrested that night on outstanding warrants. DHS filed an ex parte petition for emergency custody and dependency-neglect on November 26; an order granting emergency custody was filed the same day.

A probable-cause hearing was held on November 27, and the circuit court entered an order finding that probable cause existed to issue the ex parte order for emergency custody and that probable cause still existed, necessitating that the children remain in DHS custody pending adjudication. Hickman was ordered, among other things, to cooperate with DHS; follow the case plan and court orders; refrain from using illegal drugs or alcohol; have a drug-and-alcohol assessment performed and follow the recommendations; submit to random drug screens; obtain and maintain stable housing and employment; and demonstrate the ability to protect the children and keep them safe from harm.

An adjudication hearing was held on March 25, 2020, and in an order entered on April 22, the circuit court adjudicated the children dependent-neglected and set the goal of

2

the case as reunification. The circuit court ordered that the children remain placed with Norma Stephenson, their maternal grandmother.

A review hearing was held on July 24, 2020. On October 5, the circuit court entered an order finding Hickman had done "zero" to get her children back, finding she had not complied with any of the court orders, including consistent drug screening, completion of a drug-and-alcohol assessment, obtaining stable employment, and demonstrating that she could keep her children safe in a drug-free environment. The circuit court continued the children in the legal custody of DHS and in the physical custody of their maternal grandmother.

A permanency-planning hearing was held on November 20. In an order entered on December 16, the circuit court changed the plan from reunification to authorizing a plan for adoption with DHS filing a petition for termination of parental rights. DHS filed a petition to terminate Hickman's parental rights on January 8, 2021, alleging three bases— (1) the children had been adjudicated dependent-neglected and had continued out of her custody for a period of twelve months, and despite a meaningful effort by DHS to correct the conditions causing removal, the conditions had not been remedied (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*); (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated placement of the children in her custody was contrary to their health, safety, or welfare and that, despite the offer of appropriate family services, Hickman had manifested the incapacity or indifference to remedy the subsequent issues or factors or to rehabilitate the circumstances preventing placement of the juveniles in her custody (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*); and

3

(3) the children were subjected to aggravated circumstances (Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*). DHS also alleged it was in the children's best interests for Hickman's parental rights to be terminated.

In an order entered March 19, 2021, the circuit court terminated Hickman's parental rights on the twelve-month failure-to-remedy ground, finding termination was in the children's best interest because they are adoptable, and they would be subjected to potential harm if returned to Hickman's custody due to continued substance-abuse issues, exposure to illegal drugs, and inadequate supervision. This appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the children. *Griffin v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 635. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the children will be adopted and of the potential harm caused by returning custody to the parent. *Id.* Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.*

We review termination-of-parental-rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a

4

finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Id.*

Hickman does not challenge the ground relied on by the circuit court for termination. Therefore, we need not review whether the circuit court erred in finding that statutory grounds for termination existed. *See Robinson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 251, 520 S.W.3d 702.

Hickman's sole argument on appeal is that termination of her parental rights was not in her children's best interest. A best-interest finding must be based on the circuit court's consideration of at least two factors: (1) the likelihood of adoption if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. *Baxter v. Ark. Dept' of Hum. Servs.*, 2017 Ark. App. 508. It is the overall evidence—not proof of each factor—that must demonstrate termination is in the child's best interest. *Id.*

Hickman makes no argument that the children are not adoptable, thus abandoning any argument to the contrary for purposes of appeal. Instead, her argument focuses on the potential-harm prong of the best-interest step. A potential-harm analysis must be conducted in broad terms, with the circuit court considering the harm to the children's health and safety that might occur from continued contact with the parent. *Barnes v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 525. There is no requirement to find actual harm would result or to identify the potential harm. *Id.* In determining potential harm, the circuit court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Scott v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 347, 552 S.W.3d 463.

Hickman argues that DHS failed to prove that termination of her parental rights was in her children's best interest because there was a less restrictive alternative such as permanent custody or guardianship since the children were already placed with their maternal grandmother. In support of this argument, she cites *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383; *Rhine v. Arkansas Department of Human Services*, 101 Ark. App. 370, 278 S.W.3d 118 (2008); and *Ivers v. Arkansas Department of Human Services*, 98 Ark. App. 57, 250 S.W.3d 279 (2007). Each of these cases is factually distinguishable from the present case. In *Lively*, the children were in their mother's custody and had a permanent home with her; in *Rhine*, this court held that the circuit court had abused its discretion in denying a motion for continuance so that the mother could sign a consent to the termination of parental rights; and in *Ivers*, while the primary placement option with the maternal grandmother factored into the reversal, the primary reason for reversal was Ivers's demonstration of "commendable resolve in seeking to remedy his drug problem," *Ivers*, 98 Ark. App. at 67, 250 S.W.3d at 286, and the absence of any testimony in the record that Ivers would be unable to remedy his drug problem when the record indicated "general compliance with every aspect of the case plan." *Id.*

Unlike the cases cited by Hickman, the children are not in the custody of their other parent, and there was scant evidence Hickman made much progress with regard to the case plan. Here, although the maternal grandmother had physical custody of the children, DHS had legal custody when Hickman's parental rights were terminated. Under the Arkansas permanency-planning statute, if a child cannot be returned home or a plan for reunification cannot be implemented, the next most permanent goal is adoption; an exception is when

6

the child is being cared for by a relative and it is determined that termination is not in the child's best interest. However, because the children were not in the custody of a relative at the time of termination, and the circuit court found termination to be in the children's best interest, the exception does not apply. *Robinson*, *supra*; *see also Dye v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 10, 592 S.W.3d 254; *Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, 585 S.W.3d 703.

Hickman also argues termination was not in the children's best interests because they have a bond with her that should be preserved. Termination of parental rights will not be reversed on the basis of a parent's bond with the child. *See Holdcraft v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 151, 573 S.W.3d 555. Furthermore, there was evidence Hickman was still testing positive for illegal drugs, and she had failed significantly to follow the case plan or the orders of the circuit court. The circuit court's determination that the children would suffer potential harm if returned to Hickman's custody was not clearly erroneous.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Janet Lawrence*, attorney ad litem for minor children.