--------
MIKE MURPHY, Judge *87 Appellant Wilburn "Will" Heath appeals from the Faulkner County Circuit Court's termination of his parental rights to his child, H.H. (DOB: 3/15/2016). Will argues that the circuit court erred in its determination because termination of his parental rights was not in H.H.'s best interest.[1] We affirm.
The Arkansas Department of Human Services ("DHS") exercised emergency custody of H.H. on September 5, 2017, due to domestic violence between the parents with the juvenile present, drug use by both parents, inadequate supervision, and parental unfitness. Both parents, Brittney and Will Heath, lived in the home, and H.H. was removed from the custody of both. The petition and supporting affidavit detailed that H.H. has a sibling, C.M. Brittney reported that C.M. was in the care of his maternal grandmother. On September 8, the circuit court entered an ex parte order for emergency custody of H.H. The order found that Will had four violations and sentences against him for domestic violence and that on two separate occasions, a no-contact order had been entered and dismissed to protect Brittney from his abuse. On September 12, the circuit court held a probable-cause hearing wherein it found that probable cause existed for H.H. to remain in DHS's custody.
On October 10, 2017, the circuit court held an adjudication-and-disposition hearing wherein it found that based on the stipulation of the parties, H.H. was dependent-neglected due to drug-use and domestic-violence issues that resulted in parental unfitness. Additionally, the circuit court found that the allegations in the original emergency petition and affidavit were true and correct and ordered that the goal of the case be reunification with a concurrent goal of adoption. At the time of this hearing, Will was incarcerated, and the circuit court ordered that his visitation through DHS be contingent on his release from custody. The circuit court further ordered, among other things, that Will submit to a psychological evaluation and follow the recommendations; participate in counseling; submit to random drug screens; submit to a drug-and-alcohol assessment and follow the recommendations; attend AA/NA meetings and provide written documentation of such to the caseworker; obtain and maintain stable housing and employment; pay child support for H.H.; and cooperate with DHS. It also advised Will that he had a year to comply with these orders so that H.H. could permanently return to his custody.
On January 9, 2018, the circuit court held a review hearing wherein it ordered that the goals continue to be reunification and adoption. At this hearing, the circuit court found that Will had only partially complied with the case plan and court orders in that he had been arrested in September 2017 for violating a no-contact order and domestic abuse of Brittney; he was not employed; he had completed parenting classes; and he was scheduled to begin treatment at the Quapaw House that month. The circuit court further ordered Will to enroll in and complete a program for domestic violence.
The circuit court held a second review hearing on April 24, 2018, wherein it continued the previous goals and found that Will had attended minimal visits with H.H.; was hospitalized for attempted suicide; and had failed to comply with the case plan and court orders in that he was *88 incarcerated in the Faulkner County jail for a probation revocation, violating a no-contact order, and obstructing governmental operations. At a third review hearing held on July 3, the circuit court found that Will had made no progress toward alleviating or mitigating the causes of H.H.'s removal from the home. Specifically, the circuit court found Will had been in the Faulkner County Detention Center for the past three months on a twelve-month sentence.
On August 21, the circuit court held a permanency-planning hearing wherein it changed the goal to adoption. In support of its order, the circuit court found that Will had been released from jail into a six-month drug-rehabilitation program; he had been incarcerated from April to July 2018; he had not visited H.H. since March 2018; and he had not completed mental-health treatment. DHS filed a termination petition, and on October 2, the circuit court conducted a termination-of-parental-rights hearing.
At the termination hearing, Will testified that he was currently living at the Zoo Outfitters Operation (the Zoo), which is a six-month residential drug-rehabilitation program. He admitted that he was not in a position to take H.H. into his care that day but that the Zoo was equipped for H.H. to visit. He explained that between the distance and the visitation policy, he had not seen H.H. because visiting hours were held when DHS's offices were closed. Will said he had been sober since January. He testified that he was not employed but worked free of charge for the Zoo. Will thought that Lisa Tew, H.H.'s maternal grandmother, was an appropriate placement for the time being. He acknowledged H.H. had been out of his custody for over a year, but he requested more time to continue the progress he was making. Will explained that while he has had trouble with the law, it was nothing related to drugs. He admitted he has not helped support H.H. since this case opened. Lastly, he discussed his suicide attempt that occurred immediately after he had completed a detox program and his diagnosis of major depressive disorder.
Lisa Tew testified that she is the maternal grandmother and currently the foster parent. She expressed her desire to adopt H.H. if the court terminated the parental rights.
At the conclusion of the hearing, the circuit court granted the petition to terminate Will's parental rights based on both the "failure-to-remedy" ground and the "failure to provide material support or maintain meaningful contact" ground. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) -(ii)(a) . Additionally, the circuit court found that termination of Will's parental rights was in the best interest of H.H. due to her adoptability and the potential harm that would result if she was returned to Will's custody. Will filed a timely notice of appeal.
We review termination-of-parental-rights cases de novo. Strickland v. Ark. Dep't of Human Servs. , 2018 Ark. App. 608, at 9, 567 S.W.3d 870, 876. An order forever terminating parental rights must be based on a finding by clear and convincing evidence that termination is in the child's best interest.
*89 Ark. Code Ann. § 9-27-341(b)(3)(A). The circuit court must consider the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm that could be caused if the child is returned to a parent. Id. The circuit court must also find by clear and convincing evidence one or more grounds for termination. Id. When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the circuit court's finding is clearly erroneous. McGaugh v. Ark. Dep't of Human Servs. , 2016 Ark. App. 485, 505 S.W.3d 227. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id.
Will directs our attention to Cranford v. Arkansas Department of Human Services , 2011 Ark. App. 211, 378 S.W.3d 851, in which we reversed the circuit court's best-interest determination. In Cranford , we held that termination did not provide greater stability to a child who had been in the custody of his grandparents and would continue to reside with them regardless of whether parental rights were terminated. However, Cranford is distinguishable from the instant case. First, H.H. is still in the custody of DHS. The maternal grandmother, Lisa Tew, is merely a placement option for DHS, and given that the maternal grandmother's rights are derivative of the mother's rights, which have been terminated, this placement option may change. Thus, it has not been established that this is a permanent or stable option. See Scrivner v. Ark. Dep't of Human Servs. , 2016 Ark. App. 316, at 5, 497 S.W.3d 206, 209 (emphasizing the difference between children being in the custody of grandparents versus grandparents being merely a placement option).
Will's appeal never directly challenges either the sufficiency of the evidence to support the statutory grounds the circuit court found to terminate his parental rights or the adoptability prong of the best-interest analysis. Therefore, he abandons any challenge to those findings on appeal. Isbell v. Ark. Dep't of Human Servs. , 2019 Ark. App. 110, 573 S.W.3d 19. Accordingly, we affirm.
Affirmed.
The circuit court also terminated the parental rights of the child's mother, Brittney Heath, but she is not a party to this appeal.