Cite as 2019 Ark. App. 383

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-315

|  |  |
|---|---|
| | **Opinion Delivered:** September 18, 2019 |
| DALANA PHILLIPS | |
| APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17JV-17-112] |
| V. | |
| | HONORABLE MICHAEL MEDLOCK, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | AFFIRMED |
| APPELLEES | |

## ROBERT J. GLADWIN, Judge

Appellant Dalana Phillips appeals the January 14, 2019 order of the Crawford County Circuit Court terminating her parental rights to her three minor children, R.M., S.M., and C.P. Dalana makes a limited argument that termination of her parental rights was not in the children's best interest because the children were living with their grandparents. We affirm.

I. *Facts and Procedural History*

On May 24, 2017, at approximately 1:00 p.m., officers from the Van Buren Police Department were called to 1015 Twilight Lane after receiving a report that a child had been left home alone. Once on the scene, Officer Dewayne Richesin called the Crawford County Department of Children and Family Services for assistance. Family Service Worker (FSW) Crystal Mikus arrived at the residence at approximately 2:15 p.m. and was met by Officer Richesin, who explained that five-year-old C.P. was home alone because his father, Aaron

Matevia,[1] ran from the residence when Officer Richesin entered the residence and noted the apparent drug use by Aaron.

FSW Mikus and Officer Richesin then spoke with R.M.'s teacher and counselor from Rena Elementary who had originally called for assistance to the residence. After gathering information on when the other two siblings would arrive home on the school bus, FSW Mikus and Officer Richesin called several phone numbers in an unsuccessful attempt to reach Dalana. The children's grandmother arrived at the residence and explained that Dalana did not have a phone and that she did not have a way of reaching her daughter. By this time, Aaron had been located and placed under arrest on multiple charges and warrants. FSW Mikus advised the grandmother that the children would be taken into custody if Dalana was not located. At approximately 3:35 p.m., R.M. and S.M. arrived at the residence from school, at which time FSW Mikus placed a seventy-two-hour hold on all three children.

The following day, May 25, at 9:00 a.m., Dalana arrived at the Crawford County Arkansas Department of Human Services (DHS) office to speak with FSW Mikus. Dalana stated that she was currently in drug classes as a condition of her parole and had been clean since she left prison. FSW Mikus administered a drug screen on Dalana at 9:30 a.m., and she tested positive for amphetamines, methamphetamine, and oxycodone. Dalana admitted that she had used drugs the previous night but stated that she is not a regular user.

---

[1]Aaron's parental rights were also terminated; however, he did not appeal and is not a party to this appeal. At the time of the children's removal, and throughout the entirety of the case, Dalana and Aaron were not in a romantic relationship.

On May 26, DHS filed a petition for emergency custody and dependency-neglect. The court entered an emergency order and found that probable cause existed to not only remove the children from the home but also to maintain them in DHS custody.

Pursuant to a hearing held on March 31, 2017, by order entered July 13, the court found that at the time of removal, Aaron had been arrested, Dalana could not be found, and at the time of contact with her the day after the children were removed, Dalana tested positive for amphetamines, methamphetamine, and oxycodone in spite of being on parole and in drug court. Based on those findings, the court adjudicated the children dependent-neglected because they were subject to "neglect, inadequate supervision and parental unfitness due to the caretakers being unwilling or unable to meet the children's needs for food, clothing, shelter and/or medical or mental health care; allegations involving physical and sexual abuse; and the caretakers' current substance use seriously affecting their ability to supervise, protect, or care for the juveniles." The court set a goal of reunification and ordered Dalana to complete services.

On July 31, the Choctaw Nation of Oklahoma filed a notice of intervention asserting the children are Indian children under the Indian Child Welfare Act (ICWA). The court accepted that intervention on August 1.

A review hearing was held on November 16. Although Dalana did not attend because she was incarcerated, the court found that she had partially complied with the case plan and orders of the court. The court ordered her to continue complying after being released.

A second review hearing was held on March 1, 2018. Dalana had been released from incarceration and was in attendance. In an order dated the same day, the court found that she again had partially complied with the case plan and orders of the court; however, the court characterized Dalana's compliance as minimal because although she was cooperating with DHS, she remained unemployed, did not have stable housing, and had tested positive for illegal substances during the review period. The court further found that Dalana had minimally benefited from her progress regarding case-plan goals. The court kept the goal of reunification but set a concurrent goal of placement with a fit and willing relative because the case-plan requirements were incomplete.[2]

A permanency-planning hearing was held on May 17, 2018. The court found that Dalana, who was in attendance, had not complied with the case plan or the orders of the court because she had admitted using methamphetamine during the review period; she did not have stable and appropriate housing; and she again was incarcerated due to parole violations during the review period. However, the court also found that Dalana had visited with her children regularly, she had displayed appropriate parenting techniques, and she was scheduled to enter inpatient treatment within the week. Because Dalana was bonded with the children, the court kept the goal of reunification but also continued a goal of placement with a fit relative. The court also ordered that reunification services continue.

At the September 13, 2018 review hearing, the court found that Dalana had not complied with the case plan or the orders of the court because she (1) left inpatient

---

[2]The children were placed with their paternal grandparents and had been there for a while prior to the termination hearing, but the record does not clearly indicate when that placement occurred.

treatment early; (2) tested positive for methamphetamine and amphetamines during the review period; (3) remained incarcerated; (4) had not complied with her parole conditions; (5) had no housing, employment, or transportation; (6) had not cooperated with DHS; and (7) had ceased participating in counseling services. The court noted, however, that Dalana continued to visit her children and displayed appropriate parenting skills while visiting. The court entered a goal of "establishing a guardianship" because "the parents should continue to work on the goals of the case plan."

DHS filed a petition to terminate parental rights (TPR) on November 2, 2018, alleging several of the nine enumerated statutory grounds against Dalana and arguing that TPR was in the children's best interests because adoptability was not a factor in achieving permanency for the children and that they would be subject to serious physical and emotional harm if returned to Dalana's custody. DHS cited Dalana's general instability, continuing legal issues, and "persistent substance abuse issues" to support its allegations of harm.

A hearing on the TPR petition was held on January 3, 2019. At the hearing, Aaron, the children's father, testified about his progress and struggles during the case. As for visitation and his relationship with the children, he said he has a good relationship with them and loves them. He stated that he enjoys spending time with them and wants to continue to have a relationship with them and provide support for the future. He noted that he made all but two of his visits with the children. He said that he did not see the kids outside of his visitation even though they are placed with his father because of the court's orders.

5

In discussing the circumstances of the children's removal, Aaron explained that he had been watching the children that day at Dalana's house because she had to appear in court. He described the house as being in average condition, saying there might have been a few dirty clothes or dishes around, but there were no bugs or foul odors. He said that the drugs he used that day were his and that Dalana had nothing to do with the children's removal. He said he had no issues with the way Dalana took care of the kids, calling her a "good mom" and saying that she met all their needs.

Dalana testified and acknowledged that the children had been removed from her custody nearly two years before the hearing and that they could not be returned to her because she had tested positive for methamphetamine. She stated that she had been released from jail in October 2017; had obtained a job in November 2017 that she still had as of January 2019; that she had completed Gateway's inpatient program in July 2018; and that she was currently attending an outpatient program at Harbor House. She admitted relapsing after completing inpatient treatment, but she noted that she had not had a positive drug screen since July 2018, some seven months before the TPR hearing. She also noted that aside from being incarcerated for ninety days, she had not missed a single class or session despite having to attend twice a week.

Dalana admitted that she had been incarcerated several times during the case but explained that she was currently on parole and reported to a parole officer every two weeks. She then conceded that she had pending felony charges in Crawford County for possession of drug paraphernalia. She testified that she had lived with her father since being paroled and acknowledged that although he had a true finding and criminal conviction for sexual

abuse, it was due to lies she told about him when she was eleven years old, after her parents had divorced and her mother entered a partying lifestyle of which her dad did not want to be a part. As a result, Dalana rebelled against him so that she could "do what [she] wanted to do." She explained that she tried to get it resolved by writing a letter to an attorney, but she and her dad were told there was nothing that could be done. She stated that the caseworker had been to her dad's house and noted how nice it was.

Dalana stated that she has a job at Taco Bell where she has been working since November 2, 2017. Although the caseworker had recently told her she needed to provide check stubs for proof of employment, Dalana explained that she had been unable to provide those because she had to obtain them from the corporate office, and the holidays had interfered with her ability to do that. However, she provided her schedule to the caseworker as proof of employment. Dalana testified that she brought home around $550 every two weeks, that she paid her car note and car insurance, and that she set aside $60 for the children's food and items such as board games for when she visited with them.

Dalana stated that she believed her outpatient treatment would be completed within a month—she began in November 2018, and it was a sixteen-week program. She also noted that she visited regularly with the children and never missed a visit.

Regarding drug screens, Dalana said that she had been randomly drug tested since July 2018, that the tests were administered by various individuals—including the caseworker, her parole officer, and the outpatient therapist—and that she had passed all the screens. She said that if DHS was basing its recommendation for TPR on her drug use, she

had been addressing that, had not missed an outpatient session, and identified her recovery coach (in the courtroom) as a source of validation.

Addie Martin, the DCFS caseworker, recommended termination of both parents' rights to all three children because they had been out of the home since May 2017—twenty months—and the issues that prevented the children's return had not been corrected. She said that Dalana had tested positive for drugs after leaving Gateway in the summer of 2018 but acknowledged that her most recent drug screens had been negative.

Regarding visitation, Martin confirmed that Dalana visited consistently and that there had been no negative reports by the supervising program assistant. She noted that the children were stable with Aaron's parents and that the only time the placement had been disrupted was when C.P. had to receive acute behavioral treatment and was welcomed back into his grandparents' home afterward. She believed it would be best to clear the children for adoption by the grandparents, even though the parents' only issue was general instability, and despite it "not [being] a secret that these children love their parents."

When asked about preserving parental rights if the children remained with relatives, Martin said DHS believed that could be a solution, but the grandparents were not "on board" with any permanent arrangement that would allow parental rights to remain intact. The grandparents were concerned about a custodial arrangement keeping the children in and out of court.

Penny Drennon, an expert witness for the purposes of the ICWA, testified that after reviewing the case file and having conversations with Dalana and DCFS staff, she believed that the children would be at risk of serious emotional or physical harm if returned home.

She said that the children's placement was ICWA compliant and that she believed it was in the children's best interest to remain there. She did not make a clear recommendation regarding TPR.

At the end of the hearing, the circuit court terminated Dalana's parental rights in an order entered on January 14, 2019. Dalana filed her timely notice of appeal on January 25 and an amended notice of appeal on February 4.

## II. *Applicable Law and Standard of Review*

Because this is a case involving Indian children under the ICWA, an order forever terminating parental rights must be based on proof beyond a reasonable doubt that TPR is in the children's best interest. 25 U.S.C.A. § 1912(f) (Westlaw, current through P.L.116-56).[3] Factors to consider in determining best interest include the likelihood of adoption and whether the children would be at risk of serious emotional or physical harm if returned home to the parent. Additionally, the petitioner must prove at least one statutory ground for TPR under the higher burden of proof. *Id.*; Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2017).

The purpose of terminating a parent's rights to his or her children is to provide permanency in the children's lives when returning the children to the family home is contrary to the children's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the children's

___

[3]The relevant section states, "No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

perspective. Ark. Code Ann. § 9-27-341(a)(3). A heavy burden is placed on the party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227.

Appellate courts review termination decisions de novo, *see Gutierrez v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 575, 424 S.W.3d 329, but will not reverse the circuit court's decision unless the court's finding is clearly erroneous. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gregg v. Ark. Dep't of Human Servs.*, 58 Ark. App. 337, 952 S.W.2d 183 (1997). Issues not argued by the appellant are waived. *Country Gentleman, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978).

A TPR order must be based on a finding, in this case beyond a reasonable doubt, that (1) termination of parental rights is in the best interest of the children, considering the likelihood that the children will be adopted and the potential harm caused by returning the children to the parent's custody and (2) at least one ground for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(A), (B).

### III. *Discussion*

Dalana argues that the circuit court's TPR decision was not supported by proof beyond a reasonable doubt because the case involved Indian children, and the court erroneously found that the ICWA expert recommended TPR when her testimony was not clear.

10

Dalana does not challenge the statutory grounds the circuit court relied on to terminate her parental rights. Therefore, any challenge relating to the statutory grounds is waived. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316–17 (2006). Moreover, while Dalana contends that TPR was not in the children's best interest, she does not directly attack any of the court's findings regarding potential harm or adoptability. In its TPR order, the circuit court found that all three children were adoptable and that Dalana's instability, continued criminal issues, and substance-abuse issues demonstrated potential harm. Because none of these findings or the sufficiency of the evidence supporting the statutory grounds, potential harm, or adoptability are challenged on appeal, this court must affirm these findings. *Benedict*, *supra*.

However, Dalana notes that DHS continued to carry the burden of proving that TPR was in the children's best interest—a finding that must be made separate and apart from any statutory grounds that might exist. Specifically, Dalana claims that the court erred in ordering TPR when the children were living with their grandparents and that TPR was therefore not in their best interest.

The TPR statute sets out two factors that must be considered by the circuit court when the court determines whether TPR is in the children's best interest—likelihood of adoptability and potential harm *See Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, at 5, 471 S.W.3d 251, 255. Considerations in making a best-interest finding may include: the preservation of the children's relationship with a grandparent; the severance of child support from a parent; whether a less drastic measure could be employed such as a no-contact order or supervised visitation; whether continued contact with the parent would be

11

beneficial to the children if or when the children are living with a relative and not in an indeterminate state that is working against them; and whether the children are living in continued uncertainty. *See Bunch v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 374, 523 S.W.3d 913; *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383; *Cranford v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 211, 378 S.W.3d 851; *Caldwell v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 102; *Conn v. Ark. Dep't of Human Servs.*, 79 Ark. App. 195, 85 S.W.3d 558 (2002). In all these cases, this court reversed the circuit court's TPR orders and demonstrated that TPR is not always necessary, especially given that the public interest behind TPR is to ensure that children will obtain greater stability and permanence and not languish in foster care indefinitely—a circumstance that the children in this case did not face.

Dalana submits that *Cranford* is particularly relevant because the grandmother had custody of the children at the time of the TPR decision, because both parents had lost custody of their young son when they had too many drinks at a local restaurant and left the scene after having been involved in a vehicle accident. On appeal, both parents argued that TPR was not in the child's best interest, and this court agreed. *Id*. This court noted that its holding was "largely grounded in the custody arrangement that was established after [the child] was removed from his parents' custody." *Cranford*, 2011 Ark. App. 211, at 9, 378 S.W.3d at 856.

Dalana also relies on *Bunch*, *supra*, in which this court relied on *Cranford* to reverse the termination of Bunch's parental rights. *Bunch* had drug-related legal issues, had experienced relapses combined with progress and was not set to take custody of the children

at the time of the TPR hearing. However, this court found, as in *Cranford*, that TPR was not in the best interest of the children because they were with their grandmother, and there was little harm in affording Bunch additional time to pursue reunification. *Bunch*, 2017 Ark. App. 374, at 8, 523 S.W.3d at 918.

We hold that Dalana's argument is misplaced. In the two cases that Dalana primarily relies on for her argument, *Cranford* and *Bunch*, the children were in the permanent custody of a relative and not in a temporary foster-care placement with a relative. *Bunch*, 2017 Ark. App. 374, at 9, 523 S.W.3d at 918; *Cranford*, 2011 Ark. App. 211, at 3, 11, 378 S.W.3d at 853, 857. In contrast, the children in this case remained in foster care at the time of TPR and had been for the entirety of the case. They were in the custody of DHS and temporarily placed with their grandparents—not in the legal custody of the grandparents. Because they were still in DHS's custody, they needed permanency. The grandparents may have been an option for placement or a future adoption, but at the time of TPR, it was "not a given that this [was] a permanent or stable option." *Scrivner v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 316, at 5, 497 S.W.3d 206, 209. Moreover, when caseworker Martin was asked about preserving parental rights if the children remained with relatives, she explained that although DHS believed that could be a solution, the grandparents were not "on board" with any permanent arrangement that would allow parental rights to remain intact.

Appellate courts have taken care to point out that the best-interest rationale of *Cranford* applies only when the child is in the legal custody of a relative, and permanency is thus not at issue. *Joslin v. Ark. Dept of Human Servs.*, 2019 Ark. App. 273, at 7–8, 577 S.W.3d 26, 29–30 (holding that where children were still in DHS's custody, *Lively* or *Caldwell*

13

challenge was inapplicable); *Heath v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 255, at 6, 576 S.W.3d 86, 89 (distinguishing *Cranford* because children were still in DHS custody and grandmother was only a placement option); *Bolden v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 218, at 13, 547 S.W.3d 129, 137 (refusing to apply *Cranford* because children were in foster care and needed permanency); *Scrivner*, 2016 Ark. App. 316, 497 S.W.3d at 209 (holding that where children were still in DHS's custody, *Lively* or *Caldwell* challenge was inapplicable).

Also, this is not a single-parent TPR case such as *Lively*, *supra*, also cited by Dalana. Considerations affecting those cases—such as the impact of terminating one parent's rights would have on the children's relationship with grandparents who may be stable influences in their lives—are not present in this case. Instead, the children in this case were in a temporary placement with the grandparents at the time of TPR, and TPR did not jeopardize these stable relationships that might become permanent adoptive homes for the children. *See Fisher v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 39, at 5–7, 569 S.W.3d 886, 888–89 (holding that in two-parent TPR cases, neither *Caldwell* nor *Lively* was applicable).

Also, unlike *Cranford* or *Bunch*, there was no compelling reason for the court to choose permanent custody, rather than adoption and TPR, because there was no reasonable prospect that Dalana would eventually reunify with the children. Dalana does not challenge the statutory grounds, admitting that "the evidence was sufficient for the court to find that the stability issues that arose subsequent to the filing of the original petition . . . had not been remedied to the extent that [Dalana] could take full custody at the time of the hearing."

DHS submits that the subsequent factors the court referenced in its TPR order were supported by six pages of factual findings. Among other things, the court found that Dalana had tested positive for drugs during the case, had been incarcerated multiple times, and did not have stable housing or employment. Dalana, likewise, does not challenge the evidence supporting the court's finding that there was little likelihood that further services would result in successful reunification. Because none of these statutory-ground findings are challenged, we hold that the evidence demonstrates that Dalana's prospects for reunification were dim.

In contrast, the child in *Cranford* was in the grandparents' custody, and this court concluded that there was "little harm in affording both [parents] more time to pursue reunification . . . and such efforts come with a potential benefit to the child." *Cranford*, 2011 Ark. App. 211, at 11–12, 378 S.W.3d at 857. Also, the prospects of reunification with the parents were likely in *Caldwell* because the father had been making positive steps toward stability in housing, employment, and alcohol counseling, and the mother had completed services and relocated closer to the child. *Id*. Likewise, in *Bunch*, this court reversed the TPR order, citing the facts that Bunch had only a single positive drug test, that she had separated from a dangerous partner, that she had been complying with the case-plan requirements, and there was no evidence that she had ever harmed the children. This court concluded in *Bunch* that "we see little harm in affording [Bunch] more time toward reunification, and such efforts come with a potential benefit to the children." 2017 Ark. App. 374, at 9–10, 523 S.W.3d at 919.

This case instead is similar to *Ross v. Arkansas Department of Human Services*, 2010 Ark. App. 660, at 7–8, 378 S.W.3d 253, 257, in which this court rejected similar arguments that TPR was not in the children's best interest because the children were in stable placements and permanency was not an issue—noting that the potential harm posed by the parent to the children was clear. Based on Dalana's incapacity to remedy the issues that arose subsequent to the removal of the children—evidence of which is not disputed on appeal—we hold that this is not a case in which the court should have leaned toward less-restrictive alternatives than TPR. There was no clear error in the circuit court's decision that adoption and TPR were the appropriate permanency goals for these children, and there are no grounds for a "firm conviction" that the court made a mistake in terminating Dalana's parental rights. *See Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356, at 11–12 (finding that the stability and reasonable hope for reunification found in *Cranford* were lacking).

Finally, Dalana acknowledges that although the court made its findings under the correct burden of proof—beyond a reasonable doubt—the court attributed testimony to the ICWA expert and based its TPR findings, at least in part, on testimony that the expert did not provide. Specifically, the ICWA requires the court to find, based on evidence that includes the testimony of an ICWA expert witness, that the continued custody of the child by the parent or Indian custodian "is likely to result in" serious emotional or physical damage to the child. *Id.* The court made such a finding, which was based on the testimony of Penny Drennon, the expert from the Choctaw Nation. Dalana maintains that the court said Ms. Drennon testified that returning custody to Dalana would likely result in serious emotional or physical damage and "that it is in the best interests of R.M., S.M., and C.P. to terminate

the parental rights of their natural parents." Dalana maintains that the court misstated Ms. Drennon's testimony because when she was asked if she had an opinion as to whether continuing or returning custody of the children to the parents or the Indian custodians "is likely to result in serious emotional or physical damage to the children," she said, "Yes, I do feel that there is a risk of serious physical or emotional damage to the children if they were returned home." Dalana argues that this is different than her stating that returning the children is "likely to result in serious emotional or physical damage," which is what the Act requires. Further, when asked if she had an opinion about whether "it is in the best interest of children to terminate the parental rights of their natural parents," she responded, "It is in the children's best interest as far as their permanency; the placement is an ICWA compliant placement, it's a relative placement." Dalana maintains that the above does not suffice as required testimony; accordingly, the TPR order could not properly be entered.

We hold that Dalana's argument that Ms. Drennon's statement that there was a "risk of serious emotional or physical damage" to the children is not sufficient under the ICWA is of no merit. Dalana offers no authority to support her contention that the ICWA's use of the term "likely to," as opposed to the term "risk of," is fatal to the TPR order. We will not consider arguments not properly argued by an appellant and supported by convincing legal authority or argument. *See Wheatley v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 438, 503 S.W.3d 86. Although the terms "risk of" and "likely to" are distinct, there is no significant difference in their meaning. We hold that this distinction without a difference is an insufficient reason for reversal of the circuit court's TPR order.

Affirmed.

17

ABRAMSON and WHITEAKER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.