Cite as 2022 Ark. App. 79

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-21-449

| | |
|---|---|
| SONYA CORE<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered February 16, 2022<br><br>APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT<br>[NO. 42PJV-18-30]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Sonya Core appeals from the Logan County Circuit Court's termination of her parental rights to her children, K.E. (DOB: 06-04-2008), M.F. (DOB: 10-26-2009), E.E. (08-29-2017), and H.C. (DOB: 11-18-2019). On appeal, Sonya argues that the termination order was not supported by sufficient evidence. She challenges only the circuit court's best-interest finding.[1] We affirm.

On November 24, 2018, the Arkansas Department of Human Services ("Department") exercised an emergency hold on E.E. and filed a petition for emergency custody and dependency-neglect. The affidavit supporting the petition alleged that the

---

[1]The circuit court also terminated the parental rights of E.E.'s father after he signed a consent, but the parental rights of the other fathers were not terminated. This appeal pertains only to Sonya.

Department received a report that Sonya and her then boyfriend Donnie Core were in a physical altercation, which resulted in their arrest for domestic violence and endangering the welfare of a minor. The Department noted that it had a current investigation and an extensive history with the family: Sonya's parental rights to E.E.'s siblings had been terminated in 2013. Originally, E.E. was placed with her maternal grandmother, but after the Department discovered the grandmother's true finding for abandonment, they removed E.E. and placed her in foster care.

The circuit court entered an ex parte order of emergency custody, and upon conducting a probable-cause hearing, it found that probable cause existed for E.E. to remain in the Department's custody. E.E. was adjudicated dependent-neglected on February 6, 2019, due to inadequate supervision and parental unfitness. The circuit court established a goal of reunification and ordered Sonya to comply with the standard welfare orders of the Department.

A review hearing was held on May 15, 2019, and Sonya was found not in compliance with the case plan and court orders. Another review hearing was held on August 7. The order from that hearing indicated that she and Donnie Core had recently married despite her previously having a no-contact order against him.

On December 4, 2019, at the permanency-planning hearing, the court kept the goal of reunification because Sonya had been "significantly and substantially" complying with the

case plan and court orders. The order noted that Sonya recently had a baby (H.C.),[2] and the circuit court gave the Department the discretion to start a trial home placement of E.E. with Sonya.

At the fifteen-month review hearing on March 4, 2020, the court found that the trial home placement was going well and that E.E. should be placed in Sonya's custody because Sonya was no longer unfit and could protect E.E.'s health and safety. The next hearing was continued since Sonya was in residential drug treatment; both E.E. and H.C. were placed there with her. At the September review hearing, the court noted that Sonya had two other children living with her and that she is "overwhelmed." It continued the goal of reunification and ordered that Sonya continue complying with the directives of the Department and orders of the court.

On October 22, 2020, the Department filed a petition for emergency custody and dependency-neglect regarding two siblings of E.E.—K.E. and H.C. The petition did not ask that K.E. or H.C. be placed in the custody of the Department but asked that a hearing be held on the petition. On November 4, the circuit court ordered that Core not be in the home where E.E. resided with Sonya. H.C.'s natural father, Richard West, moved to intervene in the case on November 10. On November 12, the Department filed a petition for emergency custody and dependency-neglect as to H.C. after taking a seventy-two-hour hold on her on November 9. The same day, the Department moved for ex parte emergency

---

[2]H.C.'s father was later identified as Richard West even though Sonya was married to Core at the time.

3

change of custody as to E.E. In an affidavit attached to both pleadings, a family service worker averred that she had arrived at Sonya's home, found Core present, and when drug tested, Sonya was positive for methamphetamine. The affidavit mentioned that K.E. was also in Sonya's home when E.E. and H.C. were removed, but she was not named in the petition for emergency custody. On November 13, an order of emergency change of custody regarding E.E. and an ex parte order for emergency custody as to H.C. were both entered.

The circuit court adjudicated K.E. and H.C. dependent-neglected in an adjudication and permanency-planning hearing on December 2, on the basis of Sonya's stipulation to the allegations of parental unfitness and substance abuse. The court found that K.E.'s father, Leonard Fulmer, was a fit parent and ordered that K.E. remain in his custody. The court maintained reunification as the goal of the case. The court also found "should genetic testing results show that Richard West is the biological father of the juvenile [H.C.], he shall be allowed to have visitation with the juvenile, upon the discretion of the Department." However, on March 12, 2021, the circuit court entered an ex parte order for emergency custody of K.E. and another sibling, M.F., directing that these two children be removed from the custody of their father, Leonard Fulmer, and be placed in the Department's custody after they disclosed "sexual abuse and drug use" in Fulmer's home. A probable-cause and review hearing was held on March 17. Sonya was found to be noncompliant and was ordered to have no visitation with any of the juveniles.

The termination hearing was held on May 5. Sonya testified first but became emotional and decided to stop testifying and left the courtroom. Brandy Ezell, the family

4

service worker, testified that Sonya never corrected the conditions that caused the removal of E.E. She testified that Sonya told her that she last used methamphetamine in March 2021, two months before the termination hearing. Ezell did not believe Sonya had the ability to maintain sobriety. Ezell testified that the prior termination of Sonya's parental rights had been to a daughter and a son and that Fulmer was the father of her son in that case. Fulmer also had his rights terminated in 2013. Ezell testified that all four children are adoptable. Although she was not recommending the termination of the parental rights of the known fathers, she was still recommending Sonya's rights be terminated as to all four children. The court terminated Sonya's parental rights, and this appeal followed.

We review termination-of-parental-rights cases de novo. *Heath v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 255, at 5–6, 576 S.W.3d 86, 88–89. We review for clear error, and a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Sonya does not challenge the court's finding that the Department proved grounds for termination. Her only argument for reversal relates to best interest. In making a

5

best-interest determination, the circuit court must look at all the circumstances, including the potential harm of returning the children to their parents' custody, specifically the effect on the children's health and safety, and it must consider the likelihood that the children will be adopted. Ark. Code Ann. § 9-27-341(b)(3). Sonya does not challenge the adoptability finding, so we address only the potential-harm prong of the circuit court's best-interest finding.

In assessing the potential-harm factor, the circuit court is not required to find that actual harm would result or to identify specific potential harm. *Gonzalez v. Ark. Dep't Hum. Servs.*, 2018 Ark. App. 425, at 12, 555 S.W.3d 915, 921. Additionally, "a parent's failure to comply with court orders is sufficient evidence of potential harm, and . . . a failed trial home placement may be considered evidence of potential harm." *Id.* at 12–13, 555 S.W.3d at 921–22. Further, potential harm includes a child's lack of stability in a permanent home; a court may consider a parent's past behavior as a predictor of future behavior. *Id.* at 12, 555 S.W.3d at 921.

Sonya acknowledges that she struggled with drugs and maintaining employment, but she notes that she was in compliance at times and had a job at the time of termination. She also claims that she was a victim of domestic violence, and there was never a finding that she physically abused any of her children or that anything with her visitation posed a threat to her children.

Sonya's arguments are requests that our court reweigh the evidence in her favor, which we will not do. Here, concerning potential harm, the termination order found,

The Court finds the testimony of Brandy Ezell to be credible and that testimony, along with the mother's testimony and actions demonstrate how each and every juvenile would be at risk of potential harm if returned to the mother. Specifically, the Court finds that due to the mother's emotional instability, the domestic violence she allowed the juveniles to view, and her continued drug use, demonstrate the serious and severe risk to the juveniles' physical and psychological health from continued contact, or placement with the mother.

These findings are supported on this record. Sonya continued to use drugs throughout the case even after regaining custody. Continued drug use is clear evidence of potential harm to a child. *Jackson v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 156, at 10. Despite meaningful contact with the Department since 2013, Sonya has continuously demonstrated that she cannot keep her children safe from harm.

Sonya argues that termination was premature and unnecessary because the Department was still working toward reunification with the fathers of H.C., M.F., and K.E. She contends that a less restrictive alternative to termination, placement with a parent, could still be achieved. To support her argument, she relies on *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383. There, we reversed the termination of a father's parental rights to children who had a permanent, stable home with their mother. Unlike the children in *Lively*, however, H.C., M.F., and K.E. were in foster care, not the custody of the other parent. Additionally, the evidence of potential harm posed by Sonya to the children was substantial and was based on both Sonya's history—her prior involuntary termination of her rights to two other children—and her actions during the case. At the end of the case, Sonya had not achieved sobriety for any meaningful period of time and had lost

custody twice in the case when she disobeyed the court's orders during trial placements. There was little likelihood of successful reunification with her.

Next, Sonya argues that the termination decision as to E.E. failed to take into consideration the sibling relationships when determining that termination was in her best interest. She contends that the testimony was clear that the Department's plan was to continue to work toward reunification with the fathers of K.E., M.F., and H.C., which would leave only E.E. free for adoption. Sonya notes there was no evidence about sibling visitation among all the children and no guarantee that E.E. would be able to maintain a relationship with her siblings if she was adopted. As such, she argues it cannot be said that the Department proved termination was in the E.E.'s best interest.

Keeping siblings together is an important consideration but is not outcome determinative because the best interest of each child is the polestar consideration. *Martin v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 192, at 5–6, 596 S.W.3d 98, 102. Evidence of a genuine sibling bond is required to reverse a best-interest finding on the basis of the severance of a sibling relationship. *Id.* Here, we are lacking evidence of a genuine sibling bond. *See Brown v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 370, at 11, 584 S.W.3d 276, 283 (holding that "much more evidence of a genuine sibling bond is required to reverse a best-interest finding based on the severance of a sibling relationship."). Additionally, as explained above, the evidence that supports the potential-harm prong of the circuit court's best-interest finding is substantial. Accordingly, we hold that the circuit court did not err in finding that termination of Sonya's parental rights was in her children's best interest.

8

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.

*Dana McClain*, attorney ad litem for minor children.