Cite as 2022 Ark. App. 371

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-22-119

|  |  |
|---|---|
| | **Opinion Delivered** September 28, 2022 |
| BRANDY HUGGINS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV-20-411]<br><br>HONORABLE TJUANA C. BYRD, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Brandy Huggins appeals the Pulaski County Circuit Court's order terminating her parental rights to her two children, K.B. and C.B. On appeal, she does not challenge the court's findings as to statutory grounds. She challenges the court's best-interest finding but, in doing so, does not argue that the court's findings as to adoptability or risk of harm were erroneous. Instead, she raises only one best-interest argument: that the court's finding that termination of her parental rights would be in the children's best interest was erroneous because the children's placement with fictive kin provided a less restrictive alternative to termination that would have maintained family bonds. We cannot reach the merits of Huggins's argument because she failed to preserve it for appellate review. Therefore, we affirm.

On May 4, 2020, the Arkansas Department of Human Services (DHS) exercised an emergency hold on K.B. and C.B. due to Huggins's drug use, unstable mental health, and

erratic behavior. DHS immediately identified Denita Thomas as a "provisional fictive kin placement," and the boys were placed in Thomas's home. Thomas's brother, Simon Harris, was identified as C.B.'s putative father. Harris had voluntarily appeared at the hospital to be interviewed during the investigation, and he expressed a desire for the children to be placed in his custody. However, DHS declined to place the children with him because he was not listed on C.B.'s birth certificate.

On May 7, DHS filed a petition for dependency-neglect and emergency custody, and the circuit court subsequently entered an order granting that petition. At that hearing, Harris acknowledged that a paternity test had revealed that he is not C.B.'s biological father, and he said that while he believed C.B. was his son, he was not shocked by the test results and still wanted the child to be placed with him. He said he attended all of C.B.'s school meetings and his choir and sports activities. The court found that Harris could participate in the case as fictive kin and ordered DHS to conduct a home study and background checks.

On May 13, the circuit court held a probable-cause hearing and found that probable cause continued to exist for the emergency order to remain in place. The court ordered Huggins to submit to drug screenings, complete a drug-and-alcohol assessment and follow its recommendations, complete a psychological evaluation and follow its recommendations, complete parenting classes, and maintain stable housing and employment.

On June 29, the circuit court held an adjudication hearing. It adjudicated the juveniles dependent-neglected due to parental neglect and unfitness, citing K.B.'s positive hair-follicle test for cocaine, Huggins's positive drug screen for cocaine, and Huggins's mental instability. The circuit court also set a case goal of reunification along with a concurrent goal of permanent

2

custody with a fit and willing relative. On October 26, the circuit court held a review hearing, at which it continued the goals set at the adjudication hearing.

On April 22, 2021, the circuit court held a permanency-planning hearing. At this hearing, the circuit court changed the goal of the case to adoption with a concurrent goal of permanent custody with a fit and willing relative. In support of this goal change, the circuit court cited Huggins's partial compliance with the case plan. Specifically, the circuit court found Huggins had not completed drug treatment, that she admitted drug use, that she made excuses for why she had not completed her hair-follicle test, that she was not addressing her mental-health issues, that she lacked employment, and that she had not taken advantage of her opportunities for visitation. The court noted that the children were placed with fictive kin, and the caseworker testified that DHS wanted to pursue placement of C.B. with Harris. The court acknowledged Harris's engagement in therapy with C.B. and the bond they shared.

On May 28, DHS filed a petition to terminate Huggins's parental rights. On August 5, the court held a termination hearing. Huggins's testimony demonstrated that she had entered a thirty-day inpatient drug-treatment program a few days prior to the termination hearing after waiting for a spot in the program to become available. She also moved to Texas a month before the hearing in order to "start over." She testified that she tried to get in touch with her caseworker to inform her of the move, including physically making a trip to the caseworker's office, but she was unable to get in touch with anyone familiar with her case and was told that the person she needed to speak to was in court. Huggins testified that she did not know why a hair-follicle test administered in May was positive for cocaine and methamphetamine; she stated that she last used the drugs in 2020. Huggins said she had been around a lot of people,

3

and she speculated that the test could be positive because of her contact with them, but she testified that she did not know anyone in Texas and had therefore removed herself from the people who might have been exposing her to drugs. She stated that she visited with her children in person weekly, that the visits went "quite well," and that although she had "put them through a lot," they were happy. She acknowledged that she needs drug treatment and said it would help her better herself. She also said that she believed the services she had received in the case had helped her. As to housing, she said she had signed a lease in Texas in March 2021 and had moved in June. She explained that, while she was not working at the time of the termination hearing, her eighteen-year-old son lived with her and helped her cover expenses. She acknowledged she did not have sufficient funds to take care of the children but stated that she had enough assistance from others to pay her bills and would find employment to supplement that assistance once she completed drug treatment. She said she was receiving psychiatric care.

Thomas testified that she is Harris's sister and was currently serving as the foster placement for both children. She clarified that Huggins visited the boys approximately two to three times a month and that Huggins has a close working relationship with Harris and Thomas. She further clarified that Huggins called the boys several times a week and had frequent video calls with them.

Jennifer Wunstel testified that she was a substitute caseworker on Huggins's case. She stated that she did not believe that Huggins had demonstrated improvement or benefited from the services to an extent sufficient to remedy the problems that initially caused the children's removal from her custody. Wunstel's safety concerns for the boys centered on Huggins's delay

4

in getting drug treatment, her positive hair-follicle test three months before the termination hearing, the fact that there are notable gaps in DHS's information regarding Huggins's mental health, her financial instability, and concerns about the appropriateness of her home in Texas. Wunstel did not provide any testimony regarding Huggins's relationship with the boys or whether DHS planned to place one or both of the children with Harris.

The court gave an oral ruling at the end of the hearing in which it found that statutory grounds existed to support termination and that termination of Huggins's parental rights was in the children's best interest. The court did not reference any less restrictive alternatives to termination. The court memorialized its findings in a written order on November 24, 2021. One week later, on December 2, the court held a posttermination review hearing. The court's subsequent order reflects that Harris filed an adoption petition, although our record is unclear as to whether the petition sought adoption of one or both of the boys.

Huggins has now filed a timely appeal of the court's order terminating her parental rights. On appeal, Huggins challenges only the court's best-interest finding as it relates to the children's placement with fictive kin, which she argues provided a less restrictive alternative to termination. We will affirm a termination of parental rights where clear and convincing evidence shows (1) that the termination is in the best interest of the juvenile, and (2) at least one of the nine available statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021); *Chaffin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 522, at 2. In determining whether termination is in a child's best interest, the circuit court must consider all the factors in the case, including the likelihood that the juvenile will be adopted and the potential harm that would be caused by returning the juvenile to the custody of the parent.

5

*Chaffin*, 2015 Ark. App. 522, at 5. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. *Id.*

An appellate court may not reverse a termination of parental rights unless the termination findings were clearly erroneous such that the reviewing court, after considering the entire record, is left with a definite and firm conviction that the circuit court below made a mistake. *Id.* at 3. In deciding whether a finding of the circuit court is clearly erroneous, the appellate court gives great deference to the superior opportunity of the circuit court to observe the parties and to judge the credibility of witnesses. *Id.* Because Huggins does not dispute the circuit court's findings as to the statutory grounds supporting termination, the factual findings supporting those grounds are deemed to be conclusively established and may, therefore, inform the appellate court's best-interest analysis. *Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, at 16, 585 S.W.3d 703, 711; *Taylor v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 264, at 13.

At the termination hearing, Huggins made only one argument against termination: a plea for more time to complete services and work the case plan. She claimed that termination was not in the children's best interest because she and the children have a strong bond, so allowing her more time to complete the case plan would be a better outcome for the children. On appeal, Huggins now raises a different argument: that the circuit court's best-interest finding was clearly erroneous because the juveniles had a stable, long-term placement with fictive kin, and therefore, there was little risk that, but for termination, the juveniles would languish in foster care. Huggins, failed to raise this argument at trial, and therefore, it is not preserved for review. *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, at 11–12, 611 S.W.3d

218, 224–25 ("[Appellant] did not make the less-restrictive relative-placement argument she now makes on appeal to the circuit court at the termination hearing, and she failed to bring up the transcript of the fifteen-month review hearing in which the goal was changed solely to termination of parental rights and adoption."). In *Smithee v. Arkansas Department of Human Services*, we explained:

> Where there is no indication that the issues in question were raised below, they will not be considered for the first time on appeal. *Miller v. Arkansas Office of Child Support Enforcement*, 2015 Ark. App. 188, 458 S.W.3d 733. For a circuit court to have committed reversible error, timely and accurate objections must have been made so that the circuit court was given the opportunity to correct the error. *Id.* It is the duty of the party seeking the relief to obtain a ruling from the trial court. *Id.* When a party seeking relief fails to obtain a ruling on the specific issue, the appellate court is precluded from reviewing the issue on appeal. *Id.*

2015 Ark. App. 506, at 4–5, 471 S.W.3d 227, 230.

Because Huggins failed to preserve her argument that the children's long-term placement with fictive kin provided a less-restrictive alternative to termination, we affirm.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.