Cite as 2023 Ark. App. 444

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-163

| | |
|---|---|
| SAHARA GONZALES<br><br>APPELLANT<br><br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | Opinion Delivered October 4, 2023<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-18-444]<br><br>HONORABLE SHANNON L. BLATT, JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Sahara Gonzales appeals from the Sebastian County Circuit Court's termination of her parental rights to her five minor children: MC1 (DOB: 12-29-06), MC2 (DOB: 04-29-09), MC3 (DOB: 11-13-11), MC4 (DOB: 08-30-15), and MC5 (DOB: 12-07-17). In a separate case, also handed down today, she appeals the termination of her parental rights to MC6. *See Gonzales v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 445. MC6 was born March 20, 2020, and did not become a part of the dependency-neglect case until February 2021. While MC6's case followed the same procedural track as his siblings, he was assigned a separate case number for trial purposes, thus resulting in a separate appellate number. The legal issues pertaining to all the children were addressed in a single termination petition,

hearing, and termination order. On appeal, Gonzales challenges only the court's best-interest finding. We affirm.

This family has a history with the Arkansas Department of Human Services ("the Department") since 2016, but on November 4, 2018, the Department exercised emergency custody of MC1, MC2, MC3, MC4, and MC5 because their mother, Gonzales, left them alone so that she could scrap her vehicle for money. While away, she used methamphetamine, which resulted in her discharge from a temporary shelter. On November 7, the Department filed a petition for ex parte emergency custody and dependency-neglect of the juveniles, and the circuit court entered an ex parte order for emergency custody.

On November 13, the circuit court held a probable-cause hearing wherein it found that probable cause existed for the emergency order to remain in place. On December 17, the circuit court adjudicated the juveniles dependent-neglected on the basis of parental unfitness due to Gonzales's substance abuse and inadequate supervision. The circuit court ordered that the case goal be reunification and that Gonzales was to obey the orders of the court and follow the case plan.

On April 15, 2019, the circuit court held a review hearing and found Gonzales noncompliant with the case plan. Additionally, the court ordered that the case-plan goal remain reunification and that the juveniles remain in the custody of the Department. On September 16, the circuit court held a permanency-planning hearing and found that Gonzales was noncompliant with the case plan and court orders. At this hearing, the court

2

changed the goal to adoption with a concurrent goal of reunification and ordered that the juveniles remain in the Department's custody.

On January 3, 2020, the Department filed a petition to terminate Gonzales's parental rights to MC1, MC2, MC3, MC4, and MC5. On February 24, the circuit court held a termination-of-parental-rights hearing in which it granted the Department's petition as to the juveniles' fathers, but it denied the petition as to Gonzales. Despite finding Gonzales in partial compliance with the case plan, it found the Department had not met its burden of proving grounds sufficient to support the petition to terminate. The court ordered Gonzales to update her address; to continue counseling; to provide proof of insurance and employment; and to comply with the requests of the Department, including ensuring access to her place of residence. Additionally, the court ordered the Department to follow up with Western Arkansas Guidance and Counseling about Gonzales's treatment; to refer Gonzales for a 180-day hair-follicle test; to look into family-support systems; and to conduct a home study on Gonzales's residence.

On March 20, Gonzales gave birth to MC6, and he remained in her custody. On May 11, the circuit court held a review hearing. At this hearing, the circuit court ordered that the case-plan goal be reunification and that the juveniles remain in the custody of the Department. The court also found Gonzales mostly compliant with the case plan because she had transportation, had completed parenting classes, she was in individual therapy, and she tested negative on a hair-follicle test.

On December 7, the circuit court held a permanency-planning hearing. At this hearing, the court continued the goal of reunification and placed temporary custody of MC1, MC3, MC4, and MC5 with Gonzales.[1] On January 7, 2021, the court ordered a trial home placement with MC2. A day before the placement, the Department visited Gonzales in her home and did not have any immediate concerns, but upon taking a drug test, she tested positive for methamphetamine. Despite this, the Department proceeded with the trial home placement of MC2 because MC2's behavioral problems had increased due to his wanting to go home, and Gonzales had made significant progress, with this positive drug test appearing to be a single slip up. Additionally, the Department planned to continue to monitor the home, and Gonzales was provided a list of guidelines to follow with the children in the home.

On February 11, the Department again exercised emergency custody of the children, including MC6. On February 22, the Department moved for ex parte emergency change of custody because Gonzales was once again using methamphetamine, she had drugs in the home, and she failed to keep the juveniles in counseling as required. The circuit court granted the Department's motion on the same day and held an emergency hearing on February 24. At the probable-cause hearing, the circuit court found that probable cause existed for the emergency order to remain in place.

On May 3, the court held a review hearing. At this hearing, the circuit court continued the goal of reunification with a concurrent goal of adoption and ordered that the

---

[1]MC2 remained in the custody of the Department.

4

juveniles remain in the custody of the Department. The circuit court also found that Gonzales had mostly complied with the case plan and orders of the court in that she was in residential drug treatment at Gateway.

On August 16, the circuit court held another review hearing wherein it continued concurrent goals of reunification and adoption and ordered that the juveniles remain in the custody of the Department. The court also found that Gonzales was compliant with the case plan and court orders.

On January 31, 2022, the circuit court held a permanency-planning hearing. At the hearing, the court continued concurrent goals of reunification and adoption as well as a concurrent goal of guardianship for MC1. The circuit court also ordered that the juveniles remain in the custody of the Department. Additionally, it found that Gonzales was mostly compliant with the case plan and court orders but had been dismissed from inpatient treatment for noncompliance and did not have independent housing.

On April 11, the circuit court held a review hearing wherein it ordered that the juveniles remain in the custody of the Department, and it continued concurrent goals of reunification and adoption. The circuit court again found that Gonzales was mostly compliant with the case plan and court orders but had been dismissed from inpatient treatment and did not have independent housing.

On September 12, the circuit court held a review hearing. At this hearing, the circuit court changed the goal of the case to adoption and ordered that custody of the juveniles remain with the Department. The court found that Gonzales was not compliant with the

case plan and court orders. Specifically, it found that she had not maintained communication with the Department; had not provided evidence of employment, vehicle insurance, or vehicle registration; did not have independent housing; had not allowed the Department to inspect her residence; and had been unavailable for drug screens due to her lack of communication.

The Department filed a petition to terminate Gonzales's parental rights to all her children, and a termination-of-parental-rights hearing was conducted on December 12. Bridget Cornett's testimony established the following. Cornett had been involved in this case as caseworker for a year and a half, and she assisted with visits for the family when the case was opened in 2018. She said Gonzales completed all services except housing and stable employment. The Department is unaware if Gonzales has enough money to support the children because Gonzales had failed to submit paystubs as ordered. Cornett also explained that MC1 was in a guardianship placement with her grandmother, but she was removed from that placement because Gonzales was found to be living there too. Previously, she was living with a friend, and prior to that she was in transitional housing through drug treatment, but she was discharged for leaving without requesting a day pass. Gonzales could not qualify for HUD assistance because she owed HUD $1600 for destruction of property in her previous house. Last, Gonzales still had to be redirected during visits, and the children need permanency.

Gonzales testified that she is not currently working but her family helps her out. She testified she has been living with her grandmother for the past couple of months, and the last time she used meth was April 2021.

At the conclusion of the hearing, the court terminated Gonzales's parental rights on the grounds of failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023); subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii); and aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*, It further found that termination was in the children's best interest because they would be at risk of harm both physically and psychologically if returned to Gonzales. Specifically, the court found that its two biggest issues were housing and income.

We review termination-of-parental-rights cases de novo. *Heath v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 255, at 5–6, 576 S.W.3d 86, 88–89. We review for clear error, and a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Gonzales challenges only the potential-harm prong of the best-interest finding. In assessing the potential-harm factor, the circuit court is not required to find that actual harm would result or to identify specific potential harm. *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, at 12, 555 S.W.3d 915, 921. Potential harm must be viewed in a forward-looking manner and in broad terms, but a court may consider a parent's past behavior as a predictor of future behavior. *Id.* at 12, 555 S.W.3d at 921. A parent's failure to comply with court orders is sufficient evidence of potential harm, and a failed trial home placement may be considered evidence of potential harm. *Id.* at 12–13, 555 S.W.3d at 921–22.

Sufficient evidence supports the court's best-interest finding. The Department provided appropriate services, but the evidence was clear and uncontroverted that Gonzales lacked stable housing and financial stability throughout the case. Additionally, even after four years of services by the Department, Gonzales still had to be redirected during visits. Four of the children were removed from Gonzales's care twice due to a failed trial home placement. Gonzales's argument on appeal is a request to reweigh the evidence, which we will not do.

On this record, we cannot say that the circuit court clearly erred in finding that the children would be at risk of potential harm if returned to Gonzales. Accordingly, we affirm the circuit court's best-interest finding.

Affirmed.

GLADWIN and GRUBER, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.